COMMISSIONER OF BANKS, petitioner, *in re* COSMOPOLITAN
TRUST COMPANY.

SAME *in re* HANOVER TRUST COMPANY.

SAME *in re* PRUDENTIAL TRUST COMPANY.

Suffolk.   March 6, 1922. — May 18, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Trust Company,* Savings department, Commercial department, In liquidation.
*Commissioner of Banks.*

Trust companies in this Commonwealth primarily are commercial banks of deposit and discount.

In the respect that trust companies are owned by stockholders, that they are managed ultimately for profit and that their main reliance to that end and of necessity must be commercial deposits, trust companies radically differ from savings banks, the fundamental idea of which under our statutes, never departed from, has been that all funds and investments are held exclusively for the benefit and security of the depositors.

Savings departments, which trust companies, by statutes enacted long after trust companies first were authorized as commercial banking institutions, were empowered to maintain, now are afforded some of the guaranties established for depositors of savings banks, chiefly in respect of investments; but the profits in excess of stipulated interest belong to the corporation for the benefit of its stockholders, and not to the depositors.

A trust company in this Commonwealth is a unit: its different departments do not constitute different entities.

While the statutory provisions relating to savings departments of trust companies specify certain securities applicable only to depositors in those departments, in all other respects, in liquidation by the commissioner of banks, depositors in the savings and in the commercial departments are on an equal footing and depositors in the commercial department are not postponed as creditors to those in the savings department.

The commissioner of banks in possession of the property and business of a trust company which had maintained a savings department, after he has been authorized to and has paid a dividend to depositors in that department from assets applicable to that department alone, has no authority, under the statutes and principles of equity as established in this Commonwealth, to pay upon the original face value of claims of depositors in the savings department from assets in the commercial department a dividend equal to that paid upon claims of depositors in the commercial department without making any deduction by reason of the dividend already paid to the depositors in the savings department or of the securities provided by statute for their benefit alone.

A petition by the commissioner of banks in possession of the property and business of a trust company for leave to pay a certain dividend upon claims of creditors in the commercial department and, without admitting the validity of

certain priority claims, to tender or pay a dividend of the same amount to claimants in that department who were claiming the priorities, was granted.

After the commissioner of banks in possession of the property and business of a trust company, in accordance with authority given him by court, had paid a dividend to creditors who had proved their claim within the time fixed by a notice given by him under G. L. c. 167, § 28, he, on his petition, was given authority to pay a dividend of the same size to creditors who had proved their claims after that time, it appearing that the later claims were as meritorious in their nature as those earlier proved, that no rights of third persons had intervened, that no delay in the ultimate settlement of the estate had been caused by the lateness of the proof of the claims and that no penalty for failure to prove claims within the time fixed by the notice had been ordered by any decree of the court.

Neither the provisions of G. L. c. 167, §§ 22–36, nor of any statute require that claimants against funds in the hands of the commissioner of banks in possession of the property and business of a trust company, who prove their claims after the date set in a notice given by the commissioner under G. L. c. 167, § 28, must be penalized.

PETITION, filed in the Supreme Judicial Court on December 23, 1921, by the commissioner of banks in possession of the property and business of the Cosmopolitan Trust Company, and afterwards amended, seeking authority to pay on ordinary claims in the commercial department of the trust company, proved and allowed by the commissioner in the sum of $6,541,758.86, a dividend of ten per cent out of the assets of that department and also from the same source to pay or tender a like percentage to owners of claims in that department upon which priorities, not admitted by the commissioner, were claimed, amounting to $730,533.46; also a

PETITION, filed in the same court on December 23, 1921, in the same capacity by the commissioner of banks, and afterwards amended, seeking authority to pay a dividend of ten per cent, also out of the assets of the commercial department of the Cosmopolitan Trust Company, upon the full face value of claims in the savings department which had been proved and allowed in the amount of $5,593,608.46; also a

PETITION, filed in the same court in the same capacity by the commissioner of banks on January 17, 1922, alleging that, after the allowance and payment of a dividend of thirty per cent upon claims filed and allowed in the savings department of the Cosmopolitan Trust Company before the expiration of the time fixed for proof of claims in a notice given by him under St. 1910, c. 399,

§ 8, further claims in that department in the amount of $9,649.02, had been filed and allowed, and seeking authority to pay a dividend of thirty per cent on such further claims; also a

PETITION, filed in the same court on December 23, 1921, by the commissioner of banks in possession of the property and business of the Hanover Trust Company, who, it appeared, had been given authority by the court to pay a dividend of fifty per cent to claimants in the savings department of the bank from assets of that department and already had petitioned for authority to pay a dividend of twenty per cent to claimants in the commercial department from the commercial department funds, and who by this petition sought authority to pay to savings department claimants out of assets of the commercial department a like dividend of twenty per cent of the amounts originally due to such claimants, $1,109,298.82, without any deduction having been made for the dividend of fifty per cent previously allowed to be paid to them from the assets of the savings department; also a

PETITION, filed in the same court on November 25, 1921, by the commissioner of banks in possession of the property and business of the Prudential Trust Company, seeking authority to declare and pay out of the commercial department funds of that trust company a first dividend of ten per cent for commercial department creditors and a first collateral dividend of ten per cent for owners of deposits in the savings department upon the amount originally due the savings department depositors and proved by them, without any deduction being made by reason of a payment of a dividend of thirty-three and one third per cent already made to savings depositors from the assets of the savings department.

No answers were filed to the first and third petitions. The first three petitions were ordered to be heard together and were reserved by *Crosby*, J., for determination by the full court upon the petitions as amended and the answers.

The facts in the fourth petition were agreed to and, by order of *Crosby*, J., the case was reserved for determination by the full court upon the petition, an answer of a creditor in the commercial department of the trust company and the agreed statement of facts.

The fifth petition was reserved by *Jenney*, J., "for the determi-

nation of the full court upon the question of whether as a matter of law dividends out of the general assets of said company or out of the assets of its commercial department may be paid to owners of deposits or to creditors in its savings department upon amounts due them at the time of the closing of said trust company and which have been proved by them, provided that they have not been paid in full, until they have been paid in equal measure with the creditors of the commercial department who have proved their claims."

Material facts are described in the opinion.

*J. E. Hannigan*, for the commissioner of banks *in re* Prudential Trust Company.

*F. H. Smith, Jr.*, for the commissioner of banks *in re* Hanover Trust Company.

*D. L. Smith*, for the commissioner of banks *in re* Cosmopolitan Trust Company.

*F. J. Carney*, for savings department creditors in all the banks.

*H. Williams, Jr.*, for certain commercial depositors in Cosmopolitan Trust Company.

*J. A. Lowell*, for trustees of Ponzi, commercial depositors in Hanover Trust Company.

*E. F. McClennen*, for Commonwealth Trust Company, a commercial creditor of the Cosmopolitan Trust Company.

*D. T. O'Connell*, for commercial depositors in the Prudential Trust Company.

*F. T. Field*, for creditors of the commercial department of the Cosmopolitan Trust Company.

RUGG, C.J. 1. The main question presented for decision in these cases is whether a dividend ought to be paid to the depositors in the savings departments in trust companies (which are being liquidated by the commissioner of banks under St. 1910, c. 399, as amended, now G. L. c. 167, §§ 22 to 36); on the face of their several claims without deduction for dividends already paid and for the value of special security set apart by law but not yet realized for the benefit of depositors in the savings departments, or whether such dividend ought to be paid only on the balance due on such several claims after the deduction of dividends paid and the value of the special security sequestered by law for the benefit of depositors in the savings departments.

The pertinent clauses of the statute are St. 1908, c. 520, §§ 1 to 4, as amended by St. 1920, c. 563 (see now G. L. c. 172, §§ 60 to 64). By § 1 of the original act every trust company conducting a savings department is required to transact all business relating thereto in a separate and distinct department. By § 2 of said c. 520 all savings deposits are special deposits, and all loans and investments thereof must be made in accordance with the law governing the investments of deposits in savings banks. By § 3 of said c. 520 savings deposits and the investments and loans thereof are appropriated solely to the security and payment of such deposits, cannot be commingled with other investments, money or property controlled by the trust company, nor be liable for its other debts until after the savings deposits have been paid in full. The accounts and transactions of the savings department must be kept separate and distinct from its other business. The words of § 4 of said c. 520 are, "The capital stock of such corporation with the liabilities of the stockholders thereunder shall be held as security for the payment of such deposits, and the persons making such deposits or entitled thereto shall have an equal claim with other creditors upon the capital and other property of the corporation in addition to the security provided for by this act."

The facts are that part payment has been made on the claims of the savings depositors and that now there are funds in hand from which a dividend may be paid to commercial depositors, and the commissioner of banks asks authority to pay out of commercial assets a dividend of equal percentage on the face of the claims of the depositors in the savings departments, it being contended that they are so entitled under the statute.

There is no explicit provision in the statute governing the rights of parties upon these precise facts. The cases at bar must be decided upon the general terms of the statute in the light of relevant legal principles.

Trust companies are primarily commercial banks of deposit and discount. They are owned by stockholders and are managed ultimately for profit. Their main reliance to this end is and of necessity must be commercial deposits. In this respect they differ radically from savings banks, the fundamental idea of which under our statutes has never been departed from, that all funds

and investments are held exclusively for the benefit and security of the depositors. There are no stockholders or corporation with purpose or possibility of profit, "independently of the depositors; but the latter are to share whatever profit may be made in just proportion among themselves. The corporation is a mere agency for managing the moneys of the depositors." *Lewis* v. *Lynn Institution for Savings*, 148 Mass. 235, 243, 244. The promise of the savings bank is not an absolute promise to pay in full at all events. The relation of savings bank and depositor is one of management of a common fund for the mutual benefit of all depositors. Without pausing to trace the history of savings departments of trust companies, it may be said that trust companies were authorized as commercial banking institutions long before the savings departments were recognized by law. Such departments now are afforded some of the guaranties established for depositors of savings banks, chiefly in respect of investments. But the profits in excess of stipulated interest belong to the corporation for the benefit of its stockholders, and not to the depositors. The investments of the savings department constitute in a sense a trust fund for the benefit of the savings department depositors. In addition, the capital stock of the corporation and the stockholders' liability are for their security. It is in connection with these special securities that the statutory words occur, to the effect that depositors in. the savings department "shall have an equal claim with other creditors upon the capital and other property of the corporation."

While in some aspects the depositors of the savings department are *cestuis que trusts* and the trust company is trustee, in other aspects the depositors are creditors and the trust company the debtor. *Reed* v. *Home Savings Bank*, 130 Mass. 443. *Dickinson* v. *Leominster Savings Bank*, 152 Mass. 49, 52. *Greenfield Savings Bank* v. *Abercrombie*, 211 Mass. 252. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 240 Mass. 254.

Cases somewhat analogous to those at bar have arisen in this court. In 1820, the question was presented whether a creditor of an insolvent estate of a decedent, having as security for his debt a mortgage given to him by the decedent of less value than the amount of his debt, could prove his claim for the face of his debt or whether he must first deduct the value of his security

and prove only for the excess of his debt above the value of his security. The only statute upon the subject was that the property should be "distributed to and among all the creditors, in proportion to the sums to them respectively due and owing." St. 1784, c. 2. That case, being one of novel impression, was decided by applying the general chancery rule as it then existed in England because that rule was just and equitable and reasonable and consistent with the nature of the contract. It was held that such a creditor, having a mortgage or other security, must first apply the value of the security to the reduction of his debt and prove only for the balance, or that, if he preferred to prove for the whole amount, he must surrender his security for the benefit of the estate. *Amory* v. *Francis*, 16 Mass. 308. The rule thus early declared has been consistently followed in this Commonwealth. *Farnum* v. *Boutelle*, 13 Met. 159. *Merchants' Bank* v. *Eastern Railroad*, 124 Mass. 518, 524. See *Hale* v. *Leatherbee*, 175 Mass. 547, where all the other intervening cases are collected and many of them reviewed. This rule has been followed and applied in numerous cases in other jurisdictions. *Bank Commissioners* v. *Security Trust Co.* 70 N. H. 536, 539–543. *Lippitt* v. *Thames Loan & Trust Co.* 88 Conn. 185, 192, 193. *Bank Commissioners* v. *Security Trust Co.* 75 N. H. 107. *Citizens & Southern Bank* v. *Alexander*, 147 Ga. 74. *State* v. *Nebraska Savings Bank*, 40 Neb. 342. *In re Frasch*, 5 Wash. 344.

The Supreme Court of the United States, in *Merrill* v. *National Bank of Jacksonville*, 173 U. S. 131, adopted the opposite view although among the four dissenting justices was a former Chief Justice of this court. It would be superfluous to enter into a discussion of the merits of the question in view of the amplitude of reasoning there to be found. There is some diversity of opinion among the State courts. See cases collected in 7 C. J. 750; L. R. A. 1918 B 1024, *et seq.* It is enough to say that on renewed study we remain content with the Massachusetts rule. Even if that were not true, it has been so long imbedded in our jurisprudence and has been so frequently followed that no departure from it now ought to be made. *Mabardy* v. *McHugh*, 202 Mass. 148.

The facts in the cases at bar call more clearly for the application of the general principle than did those in *Amory* v. *Francis*,

16 Mass. 308. The claim of a depositor in the savings department against the trust company is single. The trust company is a unit. Its different departments do not constitute different entities. While the law attempts to throw considerable security about the depositors in the savings department, it does not postpone the claims of the depositors in the commercial department as creditors to those of depositors in the savings department. The statute makes them equal and not the one superior to the other except in the particulars wherein the savings department depositor is specified as having special security. All these special securities are to be worked out for the benefit of the depositors in the savings department by the commissioner of banks in possession of the assets of the trust company and not by the savings department depositors in their own behalf in separate proceedings. When the savings department depositors are paid on account of the special security set apart by the statute for their exclusive benefit, they receive that dividend from the representative of the trust company itself. As was said in *First National Bank of Boston* v. *Eastern Railroad*, 124 Mass. 518, at page 524, when the savings department depositors resort to the general assets of the trust company in common with other creditors, "This result conforms to the rule of equality which the statute plainly recognizes as existing between all the creditors. It is supported by the consideration that this is the rule in bankruptcy; the rule applied in this Commonwealth to the settlement of the insolvent estates of deceased persons; . . . and the rule in equity, which requires a creditor, who has two funds for the payment of his debt, as against the other creditors who have but one, to resort first to his own security, and permits him to claim against the common fund only to the extent that the security which he holds falls short." See in this connection *In re Blakely Ordnance Co.* L. R. 8 Eq. 244. To follow the other rule would give to depositors in the savings department a great security beyond that which depositors in savings banks could have, and would imperil to an unusual extent the security naturally available for the commercial depositors. It would bring about a result which in the balancing of general natural equities ought not to be reached except by statutory words of unequivocal meaning.

The savings department depositors, therefore, can share with

the general creditors in the commercial assets of the trust companies for the balance of their claims after deducting the value of the assets, property and rights specially appropriated for their security.

2. No opposition is made by any party to the payment of a dividend to commercial creditors out of commercial assets as prayed for. It is warranted on the record.

3. Subsequent to the time limited for the proof of claims and subsequent to the authorization of the payment of a dividend upon the claims seasonably proved, proofs of other claims were filed with the commissioner of banks. The question is whether the unexplained failure of a claimant to present his claim within the time limited in the notice and before dividend authorized expose him to any penalty or place him in any less favorable position than if he had proved his claim within the time prescribed in the notice, as to funds subject to no higher equity than claims duly proved within the prescribed time.

These claims appear to be as meritorious in their nature as those earlier proved. No rights of third persons have intervened. No penalty for failure to prove the claims appears to have been ordered by any decree. None is required by the terms of the statute. No delay in the ultimate settlement of the estate has been caused thereby. In all good conscience these claimants appear to be entitled to the same dividend previously ordered paid to other depositors. To declare such dividend would accord with the provision in our statute for analogous cases in insolvency. G. L. c. 216, § 128.

In the Cosmopolitan Trust Company and Prudential Trust Company cases decrees may be entered (1) authorizing a dividend to commercial depositors in accordance with the prayer of the petition, (2) authorizing a first dividend to those savings department depositors whose claims were not proved until after the order for payment of like first dividend to those who proved claims in accordance with the notice. (3) In each of the cases decree is to be entered denying petition to pay savings department depositors out of commercial assets. Costs to savings department depositors as between solicitor and client payable out of the fund are to be in the discretion of a single justice.

*So ordered.*