COMMISSIONER OF BANKS *in re* PRUDENTIAL TRUST COMPANY.
COMMISSIONER OF BANKS *vs.* EDWARD A. THURSTON,
trustee in bankruptcy.

SAME *vs.* AMERICAN EXPRESS COMPANY & others.

Suffolk.    December 12, 1922. — February 26, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Trust Company*, In liquidation, Liability of stockholder, Savings department.
*Equity Jurisdiction*, Bill for instructions.  *Commissioner of Banks.  Statute,*
Construction.

The commissioner of banks in possession of the property and business of an in-
solvent trust company with a savings department and without a trust depart-
ment may maintain in the Supreme Judicial Court a bill in equity for instructions
as to what disposition, as between creditors of the savings department and
creditors of the commercial department, should be made of moneys collected in
enforcement of the liability of the stockholders under G. L. c. 172, § 24; as to
what disposition, as between creditors of the savings department and depositors
in the commercial department, should be made of moneys collected from
directors of the company on claims based upon their negligence or other mis-
management; as to whether any expenses of liquidation should be charged
against assets of the savings department; as to when depositors in the sav-
ings department are paid in full, and as to whether any reservation should
be made for payment of unclaimed deposits in the savings department.

Since no special statutory words were needed to make depositors in savings depart-
ments of trust companies at least general creditors of such companies and
entitled to share in all their assets, including moneys collected in enforcement of
*stockholders'* liability under G. L. c. 172, § 24, on an equal footing with de-
positors in the commercial departments and other general creditors, to interpret
the provisions of § 63, that the capital stock "with the liabilities of the stock-
holders thereunder shall be held as security for the payment" of deposits in the
savings department of a trust company and that such depositors "shall have an
equal claim with other creditors upon the capital and other property of the
corporation in addition to the security provided by this act," as giving to savings
department depositors a claim on capital stock and stockholders' liability on
the same basis as depositors in the commercial department, would be attributing
to those provisions no substantial meaning.

G. L. c. 172, § 63, must have been intended to produce some effective result.

While § 4 of St. 1908, c. 520 (see now G. L. c. 172, § 63), is not entirely clear, it
must be interpreted fairly to make it a workable piece of legislation and to ac-
complish the manifest purpose of the Legislature to give genuine protection to
depositors in a savings department of a trust company against the commercial
risks of general deposit and discount banking and against the temptation of the

officers of such institutions to misappropriate the readily marketable securities of the savings department under their control in order to relieve the financial straits of the commercial department.

Funds, collected by the commissioner of banks in possession of the property and business of an insolvent trust company having a savings department but no trust department in the enforcement of the liability of stockholders under G. L. c. 172, § 24, must be appropriated first to the payment of the claims of depositors in the savings department and the excess alone, after these are paid in full, appropriated to the general purposes of the liquidation and to the payment of depositors in the commercial department.

A fund, in the hands of the commissioner of banks in possession of the property and business of an insolvent trust company having a savings department and no trust department, composed of damages received in enforcement of the liability of directors for breach of their duty, is a part of the general assets of the corporation and is to be distributed and disposed of as are all other assets of like general nature.

Under provisions in G. L. c. 167, § 30; c. 172, §§ 60–63, 65, the assets of a savings department of an insolvent trust company in liquidation by the commissioner of banks, so far as needed to pay savings depositors in full, are not liable for any part of the general expenses of liquidation.

In such liquidation, incidental expenses, such as the foreclosure of a mortgage necessary for the particular conservation of ascertained assets of the savings department, disconnected from the general management of the affairs of the company, may be charged to the specific property so concerned and hence to the savings department; but all the main expenses of the commissioner and his agents for services, litigation, clerical assistance and otherwise should be paid out of general funds.

Depositors in both the commercial and the savings departments of a trust company maintaining both must be presumed to have assumed their respective relationships with knowledge of all preferences established in favor of the depositors in the savings department.

The depositors in the savings department of an insolvent trust company in liquidation by the commissioner of banks are not entitled to receive more than one hundred per cent of the amount of their claims as they existed on the date when the commissioner took possession of the property and business of the company, including all interest or dividends due on that date, and they are not entitled to receive any interest after that date although in the liquidation the commissioner may come into possession of funds in that department exceeding the amounts of claims of the depositors as they existed when he took possession.

In liquidation by the commissioner of banks of an insolvent trust company having a savings department but not a trust department, all sums which he has realized from an enforcement of the liability of stockholders under G. L. c. 172, § 24, and which are not needed to pay in full claims of depositors in the savings department, become a part of the general assets of the trust company so far as needed to pay its debts and settle its obligations.

The provisions of G. L. c. 172, § 62, do not make the assets of the savings department the property of the depositors in that department so that it must be in all events wholly distributed among them; but any of such assets remaining, in liquidation of the trust company by the commissioner of banks, after the payment in full of claims of depositors in that department as they existed when

the commissioner took possession, are released and may be used by the commissioner for the general purposes of the liquidation.

A trust company even in its savings department is not a mutual institution.

Under G. L. c. 167, §§ 31, 35, the commissioner of banks in the liquidation of a trust company having a savings department should hold out of funds applicable to payment of claims of that department a sum sufficient to pay dividends, in percentages as declared upon proved claims, upon the amount of deposits appearing upon the records of the savings department but "unclaimed" pursuant to the provisions of § 28.

The provision in G. L. c. 167, § 28, to the effect that an action upon a claim rejected by the commissioner shall not be entertained unless brought within a limited time, indicates that no reservation of funds should be made by the commissioner for claims which he had rejected and as to which no action had been brought within the time limited.

BILL IN EQUITY, filed in the Supreme Judicial Court on September 6, 1922, by the commissioner of banks in possession of the property and business of Prudential Trust Company for instructions as to the relative rights of depositors in the savings and in the commercial departments of the trust company to funds collected in the enforcement of the liability of the stockholders of the company, and as to what apportionment between the two departments should be made of the expenses of the liquidation by the commissioner. Also a

BILL IN EQUITY, filed in the Supreme Judicial Court on November 11, 1922, by the commissioner of banks in possession of the property and business of Hanover Trust Company for instructions as to what disposition should be made of assets of the savings department remaining after payment of dividends of one hundred per cent to depositors in that department who had proved their claims, and of a fund collected in the enforcement of the statutory liability of the stockholders; more particularly, " (a) whether the said funds belong to the creditors of the savings department or to the creditors of the commercial department; (b) whether any part of the fund realized from the remaining assets in the savings department must be held against deposits in said department not claimed on or before" a date previously set by a decree of the court precluding further proof of claims; " (c) whether any of the depositors in the savings department are entitled to receive more than one hundred per cent of their deposits by way of interest or otherwise, out of the fund realized from the remaining assets of the department; (d) whether, after all the depositors in the savings

department have received, or it has been provided that they may receive, one hundred per cent of their deposits, said depositors have any further interest in or right to the fund realized from stockholders on their statutory liability." Also a

BILL IN EQUITY, filed in the Supreme Judicial Court on November 11, 1922, and afterwards amended, by the commissioner of banks in possession of the property and business of Cosmopolitan Trust Company, for instructions as to (a) how he should apportion, as between the savings and the commercial departments of that company, funds collected in enforcement of the liability of stockholders; (b) how he should apportion the proceeds of claims against directors of the company; (c) whether any of the expenses of liquidation should be charged against the assets of the savings department; (d) whether the expenses of liquidation should be charged proportionately against the funds of each of the two departments.

No party appeared in answer to the bill first above described and it was reserved by *De Courcy*, J., for determination by the full court.

The trustee in bankruptcy of Charles Ponzi filed a petition to intervene in the suit second above described, the petition was allowed, and, without the filing of an answer, the suit was reserved by *Braley*, J., for determination by the full court.

In the third suit, an answer was filed by four creditors in the commercial department and the suit was reserved by *Braley*, J., upon the bill and answer for determination by the full court.

Material facts appearing in the pleadings in all the suits are described in the opinion.

The following statutes other than those quoted in the opinion are pertinent: St. 1908, c. 520, § 3 (G. L. c. 172, § 62): "Such deposits [in a savings department of a trust company] and the investments or loans thereof shall be appropriated solely to the security and payment of such deposits, and shall not be mingled with the investments of the capital stock or other money or property belonging to or controlled by such corporation, or be liable for the debts or obligations thereof until after the deposits in said savings department have been paid in full. The accounts and transactions of said savings department shall be kept separate and distinct from the general business of the corporation."

St. 1908, c. 520, § 4 (G. L. c. 172, § 63): "The capital stock of such corporation with the liabilities of the stockholders thereunder shall be held as security for the payment of such deposits, and the persons making such deposits or entitled thereto shall have an equal claim with other creditors upon the capital and other property of the corporation in addition to the security provided for by this act."

St. 1908, c. 520, § 5 (G. L. c. 172, § 65): "All income received from the investment of funds in said savings department, after deducting the expenses and losses incurred in the management thereof and such sums as may be paid to depositors therein as interest or dividends, shall accrue as profits to such corporation and may be transferred to its general funds."

St. 1910, c. 399, § 10 (G. L. c. 167, § 30): "The compensation of the special agents, counsel, employees and assistants, and all expenses of supervision and liquidation shall be fixed by the bank commissioner, subject to the approval of the supreme judicial court for the county in which the principal office of such bank is located, on notice to such bank and, upon the certificate of the bank commissioner, shall be paid out of the funds of the bank in his hands."

St. 1910, c. 399, § 15 (G. L. c. 167, § 35): "Dividends and unclaimed deposits remaining unpaid in the possession of the bank commissioner for six months after the order for final distribution shall be deposited by him in one or more national banks, savings banks or trust companies to the credit of the bank commissioner in his official capacity, in trust for the several depositors with, and creditors of, the liquidated corporation from which they were received, according to the several interests of the persons entitled thereto. The bank commissioner shall state annually in his report to the General Court the names of corporations, including individual bankers, so taken possession of and liquidated and the amounts of unclaimed and unpaid deposits or dividends with respect to every such corporation and banker. The bank commissioner may pay over the money so held by him to the persons respectively entitled thereto upon being furnished satisfactory evidence of their right to the same. In cases of doubt or of conflicting claims he may require an order of the Supreme Judicial Court authorizing and directing the payment thereof. He may apply the interest earned by the moneys so held or deposited by him toward defraying the

expenses incurred in the payment and distribution of such unclaimed deposits or dividends to the depositors and creditors entitled to receive the same, and he shall include in his annual report to the General Court a statement of the interest earned by such unclaimed dividends and deposits."

*J. E. Hannigan,* for the plaintiff in the first case.

*H. O. Cushman,* for the plaintiff in the third case.

*F. H. Smith, Jr.,* for the plaintiff in the second case.

*F. T. Field,* (*G. K. Gardner* with him,) for the American Express Company and others.

*W. R. Sears,* for the trustee in bankruptcy of Ponzi.

RUGG, C.J. These are bills in equity by the commissioner of banks, in possession under G. L. c. 167, § 22, of the property and business for purposes of liquidation of three Boston trust companies, for instructions essential to right distribution of their assets. The bills are properly brought. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 240 Mass. 254, 257. *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478. *Commissioner of Banks, petitioner, in re Cosmopolitan Trust Co.* 241 Mass. 346.

Numerous questions presented, although not the same in all the cases, have been classified for convenience of discussion. They are considered on the footing of certain facts common to all the cases, viz. (1) that no one of these trust companies maintained a trust department under G. L. c. 172, §§ 49–59, (2) that each maintained a savings department, and (3) that the assets of each of said trust companies are insufficient to pay to its depositors in both the commercial and the savings departments one hundred per cent of the amounts due them on the date when the commissioner took possession, although the assets of the savings department of the Hanover Trust Company are sufficient to pay that amount to its depositors in that department.

1. The first question is this: What disposition shall be made of moneys collected on stockholders' liability, as between depositors in the savings departments and depositors in the commercial departments?

The stockholders' liability arises under G. L. c. 172, § 24, whereby stockholders are made liable personally, equally, ratably and not one for another, for all contracts, debts and engagements

of the corporation to the amount of the par value of their stock. *Commissioner of Banks* v. *Prudential Trust Co.* 242 Mass. 78. It was provided by St. 1908, c. 520, § 4, in force when the commissioner took possession of these trust companies (see now G. L. c. 172, § 63), that the capital stock "with the liabilities of the stockholders thereunder shall be held as security for the payment" of deposits in the savings department of a trust company, and that such depositors "shall have an equal claim with other creditors upon the capital and other property of the corporation in addition to the security provided by this act." To interpret these words simply as giving to savings department depositors a claim on capital stock and stockholders' liability on the same basis as depositors in the commercial department would attribute to them no substantial meaning. Stockholders by § 24 are made liable for all debts of the trust company. That liability would include of necessity the claims of depositors in the savings department who occupy the relation in different aspects both of creditors and *cestuis qui trust.* Their claims may be rightly termed debts. *Commissioner of Banks, petitioner, in re Cosmopolitan Trust Co.* 241 Mass. 346, 351. No special statutory words were needed to make depositors in savings departments of trust companies at least general creditors of such companies and entitled to share in all their assets, including stockholders' liability, on an equal footing with depositors in the commercial departments and other general creditors. Capital stock and stockholders' liability are important resources for creditors in case of insolvency of a corporation. *Child* v. *Boston & Fairhaven Iron Works,* 137 Mass. 516. *Savage* v. *Shaw,* 195 Mass. 571. *E. S. Parks Shellac Co.* v. *Harris,* 237 Mass. 312. The section just quoted cannot be presumed to have been vain or meaningless. It must have been intended to produce some effective result. Barrenness of accomplishment cannot be imputed to the legislative department of government. *Flood* v. *Hodges,* 231 Mass. 252, 257. *Boston* v. *Epple,* 221 Mass. 395, 397. *Commonwealth* v. *Boston & Maine Railroad,* 222 Mass. 206, 208.

The structure of the statute implies that a special security for depositors in the savings department was intended. The "equal claim with other creditors" given to such depositors upon other assets of the trust company expresses by implication that the "security" provided by the immediately preceding words is some-

thing better than "equal" and confers a special preference. That which is "held as security for the payment" of specified ·debts is, both by the words used and grammatical construction of the sentence, something of higher value than "an equal claim with other creditors" upon general assets. The word "security" in § 63 is the same as that in § 62 in providing that deposits, investments and loans of the savings department shall be appropriated to the "security and payment of such deposits." It cannot successfully be contended that exclusive preference is not implied in § 62. That is some indication of the same meaning to the same word in the following section. *Raymer* v. *Tax Commissioner*, 239 Mass. 410. *Eustace* v. *Dickey*, 240 Mass. 55, 76.

This construction of the words of the statute is supported by practical considerations. The General Court attempted to throw about depositors in savings departments of trust companies many of the safeguards which protect depositors in savings banks. *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, 482, 483. It is inevitable that the depositor in the savings department of a trust company cannot be on precisely the same basis as to security with depositors in a savings bank, for the reason that such department is an adjunct to a commercial bank of deposit and discount with its business risks, and not a strictly mutual institution. The temptations and risks arising from close association between savings banks and national banks led to stringent legislation for their separation. St. 1898, c. 567. See St. 1902, c. 169, and G. L. c. 168, §§ 4, 5. Departure from that policy in permitting trust companies to conduct savings departments naturally would be accompanied by efforts to give some compensatory security to depositors in such savings departments against the risk inseparable from the union of a savings department with a commercial institution organized for private profit. Such depositors cannot well receive a strictly uniform treatment with depositors in a savings bank which under our laws is exclusively a mutual institution managed wholly in the interests of depositors. The selection or separation of some designated security to be applied to the special protection of savings department depositors in preference to general creditors of trust companies would be a normal method to adopt to this end.

The statute would not become less workable nor too clumsy

if it should be held that a similar preference is established by G. L. c. 172, § 55, for the protection of the trust departments of trust companies.

The facts of the present cases render the special security afforded to the savings department depositors by the "capital stock" of the several trust companies of no value because it has not been segregated and the companies appear to be hopelessly insolvent. But it is conceivable that in other cases circumstances might arise which would render capital stock of value as a special security. Seemingly the words "capital stock" in this section are used to designate the money paid by the original stockholders for subscriptions to shares, *Hood Rubber Co.* v. *Commonwealth*, 238 Mass. 369, and "capital" (although often used interchangeably with capital stock) to indicate general assets including investments and surplus. *Tax Commissioner* v. *Putnam*, 227 Mass. 522. *D'Ooge* v. *Leeds*, 176 Mass. 558. *People* v. *Commissioners of Taxes*, 23 N. Y. 192, 219, 220. *Wetherbee* v. *Baker*, 8 Stew. 501, 505. *Person & Riegel Co.* v. *Lipps*, 219 Penn. St. 99, 109. *West* v. *Newport News*, 104 Va. 21, 25. *Tradesman Publishing Co.* v. *Car Wheel Co.* 95 Tenn. 634, 654. The distinction appears not to be of prime importance in the cases at bar.

The section (St. 1908, c. 520, § 4, now G. L. c. 172, § 63) is not drawn with the utmost clarity but it must be interpreted fairly to make it a workable piece of legislation and to accomplish the manifest purpose of the Legislature to give genuine protection to depositors in the savings department against the commercial risks of general deposit and discount banking and against the temptation of the officers of such institutions to misappropriate the readily marketable securities of the savings department under their control in order to relieve the financial straits of the commercial department.

It follows that moneys derived from stockholders' liability must be appropriated first to the payment of the claims of depositors in the savings departments and the excess alone, after these are paid in full, appropriated to the payment of depositors in the commercial department.

2. The second question is this: What disposition, as between depositors in the savings departments and depositors in the commercial departments, shall be made of moneys collected from

directors of a trust company on claims for their negligence or other mismanagement?

The averments are that the damages to the trust company resulting from mismanagement occurred both in the commercial and in the savings departments. The directors occupy a fiduciary relation to the trust company. The trust company is a single entity. Title to all property is in that single entity. The directors are the officers of that one corporation. Their liability in the particulars here under consideration is to that one corporation. *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, 483. *Cosmopolitan Trust Co.* v. *Mitchell,* 242 Mass. 95. As a practical matter it would be difficult to ascertain and apportion the damages wrought to the several departments by these breaches of duty. One rule more equitable in its operation than another under all circumstances hardly could be formulated for the apportionment of such damages. The statute makes no reference to the liability of directors to the corporation or to the disposition of damages recovered for breach of their duty. Such liability is not devoted by law as preferential security for any class of depositors or creditors. Therefore, such damages become a part of the general assets of the corporation and are to be distributed and disposed of as are other assets of like general nature. It is not necessary to inquire whether a different rule would apply to damages recovered from directors for losses sustained by the savings department alone of a solvent trust company which was continuing business.

3. The third question is whether any expenses of liquidation shall be charged against assets of the savings departments.

The pertinent provisions of G. L. c. 172, as to savings departments and savings depositors in this connection are, § 60, that in the savings department all business relating to savings deposits shall be transacted; § 61, that "All such deposits shall be special deposits;" § 62, that "Such deposits and the investments or loans thereof shall be appropriated solely to the security and payment of such deposits, shall not be mingled with the investments of the capital stock or other money or property belonging to or controlled by such corporation, or be liable for the debts or obligations thereof until after the deposits in said savings department have been paid in full. The accounts and transactions of said savings department

shall be kept separate and distinct from the general business of the corporation;" § 63 that "The capital stock of such corporation with the liabilities of the stockholders thereunder shall be held as security for the payment of such deposits" and in addition to other preferences such depositors shall have equal claim with other creditors upon other assets; and § 65, that "All income received from the investment of funds in said savings department, after deducting the expenses and losses incurred in the management thereof and such sums as may be paid to depositors therein as interest or dividends, shall accrue as profits to such corporation and may be transferred to its general funds;" and G. L. c. 167, § 30, that all expenses of liquidation "shall be paid out of the funds of the bank in" the hands of the commissioner.

The effect of these statutory provisions is that the assets of the savings department, so far as needed to pay savings depositors in full, are not liable for any part of the general expenses of liquidation. It is only in this way that force can be given to the provision that such deposits shall not be liable for debts or obligations of the trust company but shall be appropriated solely to the security and payment of the savings deposits. The dominant purpose of all these clauses of the statute is to protect the savings deposits against any encroachments by the commercial department. If profit is made out of the savings department, it goes to the general assets of the bank. Any excess of assets in the savings department, above what is needed to pay depositors in that department in full, goes to the general assets of the company, as will hereafter be stated more fully. The natural converse is that losses arising from administration of a defunct institution fall also on general assets. So far as there are incidental expenses, such as the foreclosure of a mortgage necessary for the particular conservation of ascertained assets of the savings department, disconnected with the general management of the affairs of the company, they may be charged to the specific property so concerned and hence to the savings department. These appear to be comparatively trifling. All the main expenses of the commissioner and his agents for services, litigation, clerical assistance and otherwise shall be paid out of general funds. All expenses in recovering for the savings department assets wrongfully appropriated by the commercial department, and for enforcing the liabilities of stock-

holders and similar expenses, belong to this class and likewise must be paid from general funds.

We regard this as the necessary result of the various provisions of the statutes to which reference has been made. While in some aspects this conclusion may seem harsh in its operation on the commercial depositors, it arises in part from the plain intent of the Legislature to create an interest in the depositor in the savings department "different in kind from the right of a depositor in the commercial department of the same trust company . . . ," *Kelly* v. *Commissioner of Banks*, 239 Mass. 298, 301, and in part from the special protections and immunities in other respects which the statute has thrown around the depositor in the savings department. Preferential words in the statutes already quoted support this conclusion and harmonize with it. Depositors in both the commercial and the savings departments must be presumed to have assumed that relationship with knowledge of all preferences established for the benefit of the latter. The implications of several decisions are to this same end. *Commissioner of Banks, petitioner, in re Cosmopolitan Trust Co.* 241 Mass. 346. *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, 483. *Commissioner of Banks, petitioner, in re Hanover Trust Co.* 242 Mass. 343. *Peoples National Bank* v. *Mulholland*, 228 Mass. 152, 158. *Cogswell* v. *Weston*, 228 Mass. 219. The provisions of the statute render inapplicable decisions like *Fagan Iron Works* v. *Calumet Construction Co.* 12 Buch. 345, as to apportionment of receivership or liquidation expenses according to benefit.

4. The fourth question is, when are depositors in the savings department paid in full? This question arises on the bill respecting the Hanover Trust Company.

The pertinent facts are that one hundred per cent has been paid to the depositors in the savings department of that company, a part of sums collected from stockholders' liabilities having been used for that purpose, and that since the payment of such dividend there has been realized from the assets of the savings department a considerable sum, and that there still remain assets of the savings department which appear to be good to a considerable amount, so that there is an excess of assets of the savings department above what is needed to pay to its depositors one hundred per cent of their claims as of the date when the commissioner took possession.

The depositors in the savings department are entitled only to receive one hundred per cent on the amount of their claims on the date when the commissioner took possession of the company, with all interest or dividends due at that time but without interest since that date. The assets of the savings department are to be used exclusively to that end until such depositors have been paid in full. So also the amounts received from stockholders' liabilities are a special security for the payment of savings department depositors in full. When that amount so ascertained has been paid to the depositors in the savings department, their claims are satisfied in full and they have no further interest in the assets of the trust company.

The stockholders' liability is not property of the savings department. It is simply special security, first to be devoted to making good any deficit on amounts due to depositors in that department, and then to be used to make good all other contracts, debts and engagements of the company. G. L. c. 172, § 24. All sums collected from stockholders' liability, not actually needed to pay one hundred per cent on the claims of depositors in the savings department, become a part of the general assets of the trust company so far as needed to pay its debts and settle its obligations. *Commissioner of Banks* v. *Prudential Trust Co.* 242 Mass. 78. The entire amount realized from stockholders' liabilities is, upon the facts here disclosed as to the Hanover Trust Company, to be used to pay the general creditors.

It is provided by St. 1908, c. 520, § 3, G. L. c. 172, § 62, that the assets of the savings department "shall be appropriated solely to the security and payment of" deposits in the savings department, shall not be mingled with other property of the company and shall not "be liable for the debts or obligations thereof until after the deposits in said savings department have been paid in full." These provisions do not make the assets of the savings department the property of the depositors in that department to be in all events wholly distributed among them. They simply require that such assets be appropriated for the "security and payment" of those depositors. The amounts due to such depositors are to be ascertained in the usual way and as above pointed out in detail. The final clause, to the effect that these assets shall not be liable for general debts until after the deposits in the savings department

have been paid in full, is the equivalent of saying that, after such deposits have been paid in full, then the remainder of the assets of the savings department shall be available for payment of general debts and obligations of the trust company. It is a provision which hardly can be operative except in liquidation. It can have no meaning unless payment of one hundred per cent of the claims of savings bank depositors settles those claims in full. Both the deposits in the savings department and the loans and investments thereof, as well as the stockholders' liabilities, are security for the payment of deposits in the savings department and are released for the general purposes of a trust company in process of being wound up when such deposits are paid in full. A trust company even in its savings department is not a mutual institution.

It follows that, upon the facts here disclosed, depositors in the savings department are paid in full when they have received one hundred per cent of their deposits on the date when the commissioner took possession, and when so paid have no further claim upon the assets of the savings department or upon the general assets of the company or upon sums received from stockholders' liabilities, and that funds in the savings department in excess of what is necessary to pay depositors in that department in full are a part of the general assets of the trust company and are to be used to satisfy the claims of commercial depositors or of its other creditors or to pay expenses of liquidation.

5. The fifth question is whether any reservation shall be made for payment of unclaimed deposits.

The statute affords no very clear answer to this question. However, there is provision in St. 1910, c. 399, § 15, now G. L. c. 167, § 35, to the effect that the commissioner shall hold and deposit as therein directed "Dividends and unclaimed deposits" remaining in his possession unpaid for six months after the order for final distribution. It is enacted also in § 11 of said c. 399, now G. L. c. 167, § 31, that "The court may make proper provision for unproved or unclaimed deposits." Ample directions are found in G. L. c. 167, § 28, as to how deposits shall be "claimed." In order to give effect to the words "unproved or unclaimed deposits" as well as "dividends," it seems necessary to hold out of funds of the savings department a sum sufficient to meet unclaimed deposits. In the case of reservation for deposits "unclaimed" pursuant to

the terms of § 28, it still will be necessary for persons asserting rights thereto to prove their title to the satisfaction of the commissioner or of the court under § 35. They gain no advantage but are subject to careful scrutiny. Although in the case of the Hanover Trust Company such reservation will be made out of funds left after paying savings depositors in full, the same reservation in proportion ought to be made to meet unclaimed savings deposits if there were less than one hundred per cent available for savings department depositors.

The provision in G. L. c. 167, § 28, to the effect that an action upon a claim rejected by the commissioner shall not be entertained unless brought within a limited time, indicates that no reservation should be made for rejected claims on which action has not been brought within the time limited.

All the questions presented by the several bills are answered by what has been said or have become moot and immaterial by the answers given.

*Ordered accordingly.*