ROBERT C. BALDWIN, receiver, *vs.* COMMISSIONER OF BANKS.

Essex.    March 8, 9, 1933. — June 28, 1933.

Present: RUGG, C.J., WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Trust Company,* Savings department, Liability as stockholder in national bank, In liquidation.

If funds of a savings department of a trust company have been lawfully invested in stock of a national bank, the assets of that department, upon such national bank becoming insolvent, are subject to an assessment laid upon stockholders of the national bank by the national comptroller of currency.

Where such assessment is laid after the commissioner of banks has taken possession of the trust company under G. L. (Ter. Ed.) c. 167, §§ 22–36, the claim therefor must be allowed against the assets of the savings department.

The commissioner of banks, after taking possession of the property and business of the trust company in the circumstances above described, had no right to abandon such obligation laid upon it as a stockholder of the national bank.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Essex on August 18, 1932, and described in the opinion.

The suit was reserved by *Crosby,* J., upon the pleadings and an agreed statement of facts for determination by the full court. Material facts are stated in the opinion.

*H. D. Linscott,* for the plaintiff.

*E. R. Hale, (R. M. Sullivan* with him,) for the defendant.

RUGG, C.J. The receiver of the State National Bank in Lynn, a national banking association located in Lynn in our county of Essex, seeks by this proceeding to establish a claim against the defendant in possession of the Lawrence Trust Company, a banking institution duly organized under the laws of this Commonwealth, with a principal place of business at Lawrence in our county of Essex. The case has been reserved for our determination upon the pleadings and an agreed statement of facts.

The comptroller of currency of the United States, by virtue of powers conferred upon him by law, took possession of the State National Bank in Lynn, hereafter called the bank, on December 15, 1931, and appointed the petitioner its receiver. The bank was then and has since continued to be insolvent and is now being liquidated by its receiver. On the same date, the defendant, the commissioner of banks of this Commonwealth, acting under G. L. c. 167, § 22, took possession of the property and business of the Lawrence Trust Company, hereafter called the trust company. The trust company was then and has since continued to be insolvent and its affairs are being liquidated by the defendant as required by law. The trust company was authorized to transact a general commercial banking business and it maintained also a savings department. See §§ 31–48, 60–72, of G. L. (Ter. Ed.) c. 172, which is the general law governing trust companies. The trust company is the owner of one hundred shares of the capital stock of the bank purchased in 1927 at a price of $150 per share, and paid for by check drawn on funds of its savings department. The stock has since been held as an asset of its savings department and dividends totalling $3,100

have been received and credited to the account of that department.  On February 5, 1932, the comptroller of currency, in accordance with law, declared that it was necessary to enforce the individual liability of the stockholders of the bank to the extent of one hundred per cent of the par value of each share in order to pay its debts as prescribed by the statutes of the United States.  Notice of this assessment was given to the trust company.  In May, 1932, the receiver filed with the defendant in proper form proof of claim against the savings department of the trust company for the amount of such assessment on the one hundred shares of capital stock of the bank owned by the trust company.  This claim was rejected.  In June, 1932, the receiver, being in doubt as to the department of the trust company against the assets of which such claim was provable, filed proof of claim in proper form against the commercial department of the trust company.  This claim also was rejected.  Thereupon this petition was brought. Its prayers are that the claim of the receiver be established, that the manner in and extent to which the receiver is entitled to share in the assets of the trust company, whether out of its commercial department, its savings department, or both, be determined, and that appropriate order be made for distribution to the receiver of his just proportion.

The statute governing the transaction of business by trust companies (G. L. [Ter. Ed.] c. 172) establishes a clear line of demarcation between their commercial departments and their savings departments.  Such companies are not required to maintain savings departments.  They may conduct a purely commercial business.  §§ 31–48.  It is wholly optional with each trust company whether it shall undertake the kind of business which requires a savings department.  When the kind of business described in § 60 is transacted by a trust company, a savings department becomes imperative under the law.  Numerous provisions of the general law here relevant then become operative.  By § 61 all deposits in a savings department are special and must be invested strictly in accordance with the law governing the investments of savings banks.  By § 62 such

deposits and the investments or loans thereof shall be appropriated solely to the security and payment of such deposits, shall not be mingled with other property of the trust company or be liable for its debts or obligations until deposits in the savings department have been paid in full. The accounts and transactions of the savings department shall be kept separate and distinct from the general business of the trust company. By § 63 the capital stock of the trust company with the liability of stockholders thereunder (§ 24) shall be held as security for the payment of savings department deposits, and depositors in that department are given in addition an equal claim with other creditors on other property of the trust company. By § 64 provision is made for a guaranty fund for the security of depositors in the savings department, to be kept in that department and invested only in securities permissible for its deposits. By § 65 the excess of income from this department above its specified requirements and "after deducting the expenses and losses incurred in the management thereof" accrues to the profits of the trust company and may be transferred to its general funds, but even then only when "the net undivided profits remaining on hand in the savings department after such transfer would exceed the depreciation of securities owned by said department and the other losses therein."

These provisions taken as a whole disclose a legislative purpose to require rigid separation of the savings and commercial departments in every particular, except management by the officers of the same corporation. This mandatory segregation includes funds, investments, credits, accounts, and securities. It embraces each branch of the activity of the savings department in its every ramification. It prohibits every encroachment upon assets of the savings department and their specified investments. It permits charges against those assets only for expenses and losses incurred in their management, for depreciation in the value of securities, and other losses therein. The natural import of these provisions is that a savings department shall bear out of its own resources all expenses, losses and depreciation of securities connected with its maintenance and manage-

ment, and that the trust company out of its general assets shall bear all other expenses, losses and depreciations, however caused. This is the necessary implication of the references in § 65 to "expenses and losses incurred in the management" of the savings department and to "depreciation of securities" and "other losses" in that department. The provision of § 62 to the effect that deposits, investments and loans of the savings department shall not be liable for "debts or obligations thereof" "until after the deposits in the savings department have been paid in full" refers in its context to the general debts and obligations of the trust company and not to those arising solely out of and chargeable against the assets segregated to the maintenance and management of the savings department. This is the natural construction to be placed upon the several statutory provisions already quoted or summarized. If that had been the purpose of the General Court in framing the statute as to trust companies, it would have been simple to establish a preference in favor of depositors in savings departments over all its debts, or to make the general assets alone liable for such debts. The absence of a provision of that nature is significant in view of the specific preference as to stockholders' liability established by § 63 for the benefit of the savings department to which allusion has already been made. That special preferential security is provided for depositors in the savings department without impairment of their other rights as creditors of the trust company. The general expenses of liquidation of a trust company fall upon its general assets and not upon those of the savings department. *Commissioner of Banks in re Prudential Trust Co.* 244 Mass. 64, 69–72. All losses caused to the savings department by unlawful commingling of its assets with the general assets of the trust company must be made good in cases of liquidation out of its commercial department. *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478. On the other hand, it has been held that the expenses of foreclosure of a mortgage in the savings department were chargeable to that department, *Commissioner of Banks in re Prudential Trust Co.* 244 Mass. 64, at page 74,

and costs of counsel appointed to represent depositors in the savings department in litigation directed to the determination of the respective rights and liabilities of the two departments in liquidation were ordered paid out of the assets of the savings department, *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, at pages 484–485. Thus the governing statutes already have been interpreted in accordance with the general scheme that expenses lawfully incident to the savings department alone are to be paid by that department.

Shares of capital stock in the bank were a legal investment for the funds of the savings department of the trust company. G. L. (Ter. Ed.) c. 172, § 61; c. 168, § 54, Seventh. There is not here involved any reprehensible manipulation of the funds of the savings department such as has been disclosed in several cases arising in the liquidation of trust companies. Purchase of such shares of capital stock was on its face made in the course of legitimate management of the savings department. It was said in *Matteson* v. *Dent*, 176 U. S. 521, 526, purporting to quote from *Richmond* v. *Irons*, 121 U. S. 27, 55, 56: "Under the national banking act the individual liability of the stockholders is an essential element of the contract by which the stockholders became members of the corporation. It is voluntarily entered into by subscribing for and accepting shares of stock. Its obligation becomes a part of every contract, debt and engagement of the bank itself, as much so as if they were made directly by the stockholder instead of by the corporation. There is nothing in the statute to indicate that the obligation arising upon these undertakings and promises should not have the same force and effect, and be as binding in all respects, as any other contracts of the individual stockholder." These words are of broad sweep. They include corporations as well as individuals. There is no exception in the national banking laws exempting State banks from liability to assessment if they lawfully become stockholders in a national bank. On principle we are unable to perceive any reason why a savings department of a trust company owning stock in a national bank should not

be held liable to an assessment such as here is involved. *Haynes* v. *Kershaw*, 22 Fed. Rep. (2d) 735.

It becomes unnecessary to consider whether a statute of the Commonwealth would be valid, undertaking to make payment in full of deposits in the savings department of a trust company a preference above all its debts, including an assessment such as here is in issue. There is no such statute. See *Cameron's Account*, 287 Penn. St. 560; affirmed in *Littrell* v. *Cameron*, 276 U. S. 592.

The contention of the defendant that, upon taking possession of the property and business of the trust company, he had a right to abandon its contracts or assets which might be burdensome or unprofitable cannot be supported. The obligation of the trust company as a stockholder of the bank to pay assessments, if and when lawfully levied on such stock under the law, sprang into existence when it became stockholder and it had no right to escape that obligation. That follows from *Matteson* v. *Dent*, 176 U. S. 521. The principle as to refusal by a receiver appointed by a court to fulfil burdensome contracts is not applicable to the case at bar. So also the principle that a trustee in bankruptcy may refuse to accept title to property likely to become a burden rather than a benefit is inapplicable. The underlying purpose of receiverships and bankruptcy proceedings permits an element of choice on the part of a receiver or a trustee in bankruptcy in certain instances. *Commonwealth* v. *Franklin Ins. Co.* 115 Mass. 278. *Cunningham* v. *Commissioner of Banks*, 249 Mass. 401, 423. *Commissioner of Banks* v. *McKnight*, 281 Mass. 467, 475. *Dushane* v. *Beall*, 161 U. S. 513, 515. *Glenny* v. *Langdon*, 98 U. S. 20, 30–31. *Smith* v. *Gordon*, 6 L. R. 313, 317. *Streeter* v. *Sumner*, 31 N. H. 542. *In re Webb*, 54 Fed. Rep. (2d) 1065. *Mills Novelty Co.* v. *Monarch Tool & Manuf. Co.* 49 Fed. Rep. (2d) 28, 31–32. It is not necessary to consider whether that principle would apply to shares of stock in a national bank where assessment has been made, held by an estate in the hands of a receiver or by a bankrupt. We are of opinion that that principle is not controlling in the case at bar, where the defendant was

in possession of the property and business of the trust company for the purpose of liquidation under G. L. (Ter. Ed.) c. 167, §§ 22-36, inclusive. The shares of stock were the property of the trust company charged with the encumbrance of liability to assessment under the national bank act. The liability to the assessment was an essential element of being a stockholder in the bank. *Ellis* v. *Boston, Hartford & Erie Railroad*, 107 Mass. 1, 28.

The result is that a decree is to be entered directing that the assessment made upon the Lawrence Trust Company by virtue of its being a stockholder in the State National Bank of Lynn be paid out of the assets of the savings department of the trust company.

*Ordered accordingly.*