WILLIAM TEBBETS *vs.* CHARLES A. ROLLINS.

Suffolk. April 2, 1906. — May 18, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Pledge. Receiver. Partnership.*

If a bank holds the note of a partnership indorsed by one of the partners and also holds an individual note of the same partner for which that partner wrongfully has pledged to the bank property of the partnership, but the bank has no notice actual or constructive that the property pledged does not belong to the pledgor individually, and if by the terms of the pledge the security is to be applied first to the payment of the note it is given to secure, and any excess 'may be applied in payment of any other liability of the pledgor to the bank, upon the insolvency of the partnership and also that of the pledgor, the bank as against the receiver of the property of the partnership has a right to apply any surplus from the proceeds of a sale of the pledged property after paying the pledgor's individual note to the liability of the pledgor as indorser of the partnership note held by it, in the same way as if the property pledged had belonged individually to the partner who pledged it.

In a suit to wind up an insolvent partnership, where a receiver has been appointed and the assets of the partnership are in his hands, the holder of a secured note of the partnership should be allowed to prove his debt in full before the receiver and to participate in the distribution of the assets in the proportion to which this entitles him, without any deduction for the amount realized by him on the security, unless by permitting such proof the creditor would receive more than the face value of his debt, in which case the excess must be deducted.

BILL IN EQUITY, filed in the Superior Court on June 29, 1903, by William Tebbets against Charles A. Rollins, to wind up a partnership between the plaintiff and the defendant in the whole-

sale grocery business theretofore carried on by them under the firm name of Henry Callender and Company.

A receiver was appointed on July 1, 1903. Later the case came on to be heard before *Richardson*, J. upon the receiver's report. Being of opinion that the questions of law arising upon a claim of the Fourth National Bank of Boston and the receiver's report relating thereto so affected the merits of the controversy that the matter ought, before further proceedings, to be determined by this court, the judge reported the case for such determination. If the ruling of the judge, as stated below, was right, a decree was to be entered as ordered; otherwise, such order was to be made as justice might require.

The following is the judge's report:

The receiver's statement concerning this claim in his report is as follows: "A claim for $2,920.89 has been presented by the Fourth National Bank of Boston on a note held by them for which they hold as collateral security a note of Wendell D. Rockwood and Joseph W. McIntyre, made to Charles A. Rollins for Henry Callender & Co. for $5,000 due March 17, 1905. If this note is paid by said Rockwood and McIntyre, nothing will be due on the claim of $2,920.89, and the balance will be available as a credit on the Fourth National Bank's claim for $6,128.23 already allowed."

It appeared at the hearing on the receiver's report that the Fourth National Bank of Boston was the holder and owner of a certain promissory note in the usual form made by Henry Callender and Company dated June 15, 1903, wherein they promised to pay $9,000 with interest to the order of the Fourth National Bank; that this note, hereinafter called the Callender note, was indorsed by Charles A. Rollins; that there was due thereon and unpaid $6,761.96 at the time of the hearing, being the amount of $6,128.23 already referred to and interest.

Charles A. Rollins made an individual promissory note dated June 24, 1903, wherein he promised to pay $4,000 to the Fourth National Bank or its order. With this individual note, which will hereinafter be called the Rollins note, Rollins deposited with the Fourth National Bank as collateral security a certain other promissory note made by Wendell D. Rockwood and Joseph W. McIntyre, dated June 17, 1903, wherein they promised to pay to

the order of Rollins $5,000 with interest at the rate of six per cent in twenty-one months from the date thereof, which note was given by Rockwood and McIntyre in part payment for the stock of goods of Henry Callender and Company sold to them by Rollins. This note deposited as collateral security, hereinafter called the Rockwood and McIntyre note, was also indorsed by Rollins, and was paid at maturity on March 17, 1905, and, after paying from the proceeds the above named amount of $2,920.89, which was the balance of the principal and interest due upon the Rollins note, there remained a balance in the hands of the Fourth National Bank of $1,801.33.

On March 17, 1905, when the Rockwood and McIntyre note became due there was due and unpaid upon the principal and interest of the Callender note $6,761.96, reckoning interest to this last mentioned date.

The Rollins note was in the following form:

"$4000                         Boston, Mass., June 24, 1903.

"On demand for value received, I promise to pay to the Fourth National Bank, of the City of Boston, or order, at said Bank, Four thousand                 Dollars, & interest having deposited with said Bank, as collateral security for payment of this or any other liability or liabilities of ours to said Bank, due or to become due, or that may be hereafter contracted, the following property, viz.: Note $5000 dated June 17, 1903, pay 21 mos. from date signed.

Wendell D. Rockwood.                 Jos. W. McIntyre.

the market value of which is now $......; with the right to call for additional security should the value in the judgment of the President or Cashier decline; and on failure to supply the amount demanded, this obligation shall be deemed to be due and payable on demand, with full power and authority to sell and assign and deliver the whole of said property or any part thereof, or any substitutes therefor, or any additions thereto, at any Broker's Board, or at public or private sale, at the option of said Bank, or its officers, or assigns, who shall have the right to be purchasers themselves at such Broker's Board or public sale, on the non-performance of this promise, or the non-payment of any of the liabilities above mentioned, or at any time or times there-

after, without advertisement or any notice to the undersigned or any other person. And after deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales, so to be made, to pay any of liabilities, due said Bank, as its President or Cashier shall deem proper, returning the overplus to the undersigned.

"Charles A. Rollins."

In the transaction between Rollins and the Fourth National Bank, in which the bank discounted the Rollins note, taking the Rockwood and McIntyre note as security, the president of the bank acted in its behalf and neither he nor the bank had knowledge or information that the $5,000 note due March 17, 1905, (the Rockwood and McIntyre note,) was made to Rollins for Henry Callender and Company, or at or before the time of such negotiation that it was given in part payment for the stock of goods of Henry Callender and Company sold to them by Rollins, and the bank and its president believed the transaction to be the personal transaction of Rollins and so treated it; that Rollins died testate on October 20, 1903, and Josephine F. Rollins was appointed executrix of his will and qualified as such; that Rollins's estate is insolvent; that subsequent to the filing of the bill and the appointment of the receiver, Tebbets, the plaintiff, died intestate, and George R. Fessenden was appointed administrator of his estate and qualified as such; that Tebbets's estate is insolvent; and that the estate of the firm of Henry Callender and Company also is insolvent.

The judge ruled that the Fourth National Bank had the right to prove its claim in full, to wit, for $6,128.23, the balance due upon the note including interest to July 1, 1903, the date of the appointment of the receiver, against the estate in the hands of the receiver, and that it was entitled to receive a dividend *pro rata* with the other creditors on the full amount of that sum, without any deduction on account of the balance of $1,801.33 remaining in its hands out of the proceeds of the Rockwood and McIntyre note after it had applied a portion of such proceeds in satisfaction of the Rollins note, and ordered that a decree be entered in accordance with this ruling, reporting the case to this court as stated above.

*D. Malone, W. S. Slocum & C. R. Darling*, for the receiver.

*J. R. Murphy & W. A. Buie*, for the Fourth National Bank.

BRALEY, J.    When the bank proved the partnership note for the balance shown by the report it held another promissory note made by Rollins, who although a member of the firm was also liable on the first note as an indorser.    To secure its payment he gave as collateral security a promissory note payable to his order, but which actually he had received from the makers to whom he had sold the stock in trade belonging to the partnership as a payment in part of the price.    It is stated, however, in the report that the bank took the collateral note without actual or constructive notice that it was a part of the assets of the partnership which Rollins was pledging to secure the payment of his individual debt.    By the terms of the pledge the security was to be applied first in payment of the note which it was given to secure, with the right of the pledgee to appropriate any excess in payment of any other liability due from the pledgor.    A sale of the pledge having occurred, and a surplus remaining after liquidating the principal demand, the question is whether the original proof made by the bank of the balance due upon the partnership note is to be reduced by deducting this surplus, or whether the proof shall stand for participation in dividends for the full amount. The case then is one where a creditor holding security from an indorser offers as against the maker proof of the entire amount due without crediting any payment made by the indorser, although it is shown that the indorser also is liable as a joint maker because a member of the partnership.    The contracts of the bank gave it the right to pursue both the indorser and makers until full satisfaction of its debt was obtained, and this is not changed by the insolvency of the firm, or the right on the part of creditors to resort to the individual members for satisfaction of the firm debts.    If the indorser had paid he would have been entitled to reimbursement from the partnership in full, or participation by way of a dividend if insolvency had intervened. Any security of his own that he might have pledged upon redemption would have remained his property, which his partners could not call upon him to contribute toward the payment of their joint debts, for it did not form any part of the joint assets. Upon the facts in evidence the bank having taken and held the

pledged property without notice of any equities is in no worse position, and it is not estopped from insisting upon the full benefit of the contract which it made with the indorser.

It has been held that in proof of debts against an insolvent, or a bankrupt, secured or unsecured creditors stand alike, in that each may prove his debt in full, though the secured creditor cannot eventually receive more than the face of his debt and interest. *Merrill* v. *National Bank of Jacksonville*, 173 U. S. 131. If this decision, as argued by the receiver, originally was made by a divided court, it was unanimously followed in the subsequent case of *Aldrich* v. *Chemical National Bank*, 176 U. S. 618. The receiver also contends that the first case arose under the national banking act, and is not of general application. But the equitable principle involved is not defined or limited by the nature of the business of the insolvent, or bankrupt, and depends entirely, in the absence of a statute, upon the right of the secured creditor to obtain the full benefit of his contract, unless by so doing it is found that the equitable rights of other creditors are wrongfully impaired. The general creditors of the firm have no larger rights than their debtors, who could not have compelled contribution from the separate property of the indorser, nor do they possess any equitable right to compel his creditor, who now holds his separate property under his individual contract, to make a similar contribution. Upon this somewhat vexed question it may be that our decisions are not entirely uniform, and perhaps cannot be fully harmonized, but they have been reviewed so exhaustively in the recent case of *Hale* v. *Leatherbee*, 175 Mass. 547, which arose under Pub. Sts. c. 157, that any further consideration of the subject would be unprofitable. In that case in speaking of the rights of unsecured creditors as against the claim of secured creditors to be allowed to prove their debts in full, it was said by Mr. Justice Barker, "Their equitable right is to have their own claims proved at a just amount, and to have recognized and enforced all equities growing out of the relation of the insolvent to the demand offered for proof. Until . . . full payment . . . neither the insolvent, the assignee, nor the general creditors have an equitable right to prevent the creditor from realizing by means of his security the full payment of his debt. Where the creditor by means of his security and his proof receives his whole debt, his

rights in the security and in the estate of the insolvent stop. If at the outset the value of the security and the value of the assets of the insolvent estate, as compared with the amount of the claims provable against it, are such as to show that the creditor will receive from both his funds more than the amount of his debt, the facts disclose an equitable right in the security on the part of the insolvent estate, which may be enforced by a restraint in the proof without doing injustice perhaps to the creditor. But when it is not shown that such a state of facts exists it is not necessary for the preservation of the equitable rights of the insolvent and his assignee and other creditors that the creditor be restrained in his proof." In accordance with this rule the bank should be permitted to participate in the distribution of the assets of the insolvent partnership without any deduction from the amount proved, unless it should appear that by permitting such proof it would receive more than the face of its debt. If this is shown then there should be a proportionate reduction.

*Decree accordingly.*