INTERNATIONAL PAPER COMPANY & another *vs.* THE
PRISCILLA COMPANY.

Suffolk.    March 9, 10, 1932. — November 4, 1932.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, FIELD, DONAHUE, &
LUMMUS, JJ.

*Landlord and Tenant*, Termination of lease, Construction of lease. *Mort-
gage*, Of real estate: foreclosure. *Equity Pleading and Practice*, Find-
ings by judge: inferences; Appeal; Receivership proceedings. *Re-
ceiver*. *Damages*, Liquidated. *Waiver*.

Respecting a claim for rent from May 1 to December 20, 1930, presented
in receivership proceedings begun on September 16, 1930, against a
corporation, a master found the following facts in substance: The
owner of certain land upon which he intended to erect a building
made in July, 1925, a contract in writing with the corporation and a
second corporation to give to them a lease in writing of four floors
thereof for a term of fifteen years from July, 1926; and, two days
after making such contract, gave a first mortgage of the premises to
the claimant's predecessor in title, to the lien of which the rents
under leases were subjected, and a second mortgage to a bank, and
also gave to the first mortgagee an assignment of his interest in the
contract for a lease. Time for completion of the building was ex-
tended to October, 1926. In September, 1926, the corporations en-
tered into possession of the premises. In November, 1926, the lessor
gave a third mortgage to the bank, which before that time had actual
notice of the contract for the lease, of the extension of time to com-
plete the building, and of the taking possession by the lessees under
the contract. In January, 1927, a lease, binding the two corporations
to joint and several obligations, and expressed to be subject to the
first and second mortgages, but not mentioning the third mortgage,
was delivered, and a few weeks later an assignment thereof was given
by the lessor to a representative of the first mortgagee as security
with a proviso that until default all rentals should be paid to the
lessor. The assignment was assented to by the two corporations.
It did not appear that the lessees knew of the existence of the third
mortgage until after the lease had been executed. A year later, the
bank, acting through a straw, entered to foreclose the third mort-
gage and sold the premises to its straw, to whom rent from tenants
in the building, so far as paid, was paid until August, 1930, at which
time the claimant, then successor to the first mortgagee, made an entry
to foreclose that mortgage and thereafter remained in possession, noti-
fying the lessees that he had taken possession of the building "As Mort-
gagees," and that rent then due or thereafter becoming due should be
paid to his agent, but he made no sale for the purpose of foreclosure.
No rent was paid under the lease to the two corporations between

August 6 and December 20, 1930, on which date the claimant made an entry for the purpose of terminating the lease for breach of covenant thereof. By order of the court made on November 7, 1930, all creditors were required to present their claims in the receivership proceedings on or before February 7, 1931. *Held,* that

(1) Because of the facts within the knowledge of the bank when it became third mortgagee, its title was subject to the rights of the lessee corporations under their contract with the mortgagor for the lease;

(2) The action of the bank's "straw" in foreclosing the third mortgage did not terminate the lease at that time; the lessees were not thereby released from their covenants;

(3) An inference was not warranted that the lessees, when they executed the lease after the lessor had given the third mortgage, intended to and did waive their rights to an interest paramount to the third mortgage;

(4) Although the notice given by the claimant on taking possession as agent under the first mortgage stated that "As Mortgagees . . . we have taken possession of the above mentioned building" and notified the lessees "of said possession" and demanded "rent now due or hereafter becoming due," such conduct must be considered in connection with the terms of that mortgage, the assignment to the mortgagee of rights under the contract for the lease, and later of the lease, and the consent thereto of the lessees, and, so considered, required the inference that the lease was not terminated until the entry for that purpose by the claimant on December 20, 1930;

(5) Claims for the instalments of rent falling due after the appointment of the receiver might be proved in the proceedings;

(6) Taking into consideration the subject matter of the contract, the nature of the agreements the parties entered into and all the circumstances, a provision in the lease binding the lessees to indemnify the lessor against loss of rent or, at the election of the lessor, to pay "as damages the sum of . . . $34,000" and in addition a sum representing the difference between the rental value of the premises for the remainder of the term and the rent did not stipulate a penalty for nonperformance and was not void;

(7) A payment to the claimant made in April, 1931, by the second corporation, the co-lessee of the corporation which was in the hands of the receiver, in settlement of litigation in which the claimant, persons claiming under the third mortgagee, and such co-lessee were parties and which related solely to such co-lessee's liability under the lease, should be applied in reduction of the claimant's claim in the receivership proceedings;

(8) The claim should be allowed for rent under the lease to December 20, 1930, plus $34,000 (other damages named in the lease being waived) and minus the sum paid to the claimant by the co-lessee in settlement of the litigation against it.

BILL IN EQUITY, filed in the Superior Court on September 16, 1930, for the appointment of a receiver to wind up the affairs of The Priscilla Company.

A receiver was appointed and on November 7, 1930, an order was entered requiring creditors to present their claims on or before February 7, 1931, or be forever barred from asserting them unless the court for good cause should order otherwise.

Claims of Buswell and Stewart and of Minot, trustee, described in the opinion, were duly presented and were united by assignment to Minot as trustee and then were referred to a master. Material facts found by the master are stated in the opinion. His description of the litigation against The Southgate Press was as follows:

"The Priscilla Company's co-lessee, The Southgate Press, was continuously in possession of a portion of the premises described in said lease from the completion of said building as aforesaid to April 2, 1931. Prior to March 1, 1930, the rent for all the premises described in said lease was paid to the landlord by The Priscilla Company and it in turn collected proper proportions of its payments from The Southgate Press and the aforesaid subtenants. On and after April 1, 1930, The Southgate Press paid rent at the rate of $2,793.52 per month directly to the landlord for and during the period ending June 30, 1930. On April 2, 1931, litigation then pending between claimants, The First National Bank of Boston, and Stewart on the one side and The Southgate Press on the other side, to determine the amount of Southgate's liability for rent or on other accounts in respect to said premises and to determine to whom it was indebted was compromised. Pursuant to this compromise The Southgate Press paid the total sum of $35,000 for general covenants not to sue given it by the claimants, The First National Bank of Boston, its straw men, Buswell and Stewart. Of this said sum $3,500 was paid to said bank, $3,500 to Stewart and $28,000 to claimants. At that time said bank and said Stewart claimed to be entitled to all unpaid rents and other payments due from The Southgate Press in respect of the period ending August 6, 1930.

"The claimant asserted against The Southgate Press the same claims specified in the foregoing proof of claim,

amounting to $71,740.03, plus $3,021.71 for electricity, water and gas between August 2, 1930, and April 2, 1931, together with a claim amounting to $9,311.67 for use and occupation of its said portion of the premises described in the lease from December 20, 1930, to April 2, 1931."

By order of *Sisk*, J., objections to the report by Minot, trustee, and by the receiver were overruled and the report was confirmed, and it was "ordered, adjudged and decreed that the claim of Wayland M. Minot, Trustee, is $14,757.37."

The judge then reported for determination by this court so much of the suit as related to such claim.

The case was argued at the bar in March, 1932, before *Rugg*, C.J, *Crosby*, *Wait*, & *Field*, JJ., and in October was submitted on briefs to all the Justices.

*B. Corneau*, for Straus National Bank and Trust Company of New York and another.

*R. S. Wilkins*, for the receiver.

CROSBY, J. The plaintiffs, as creditors of the defendant, on September 16, 1930, filed a bill in equity in the Superior Court alleging the inability of the defendant to pay its debts as they matured, and the danger of waste of its assets, and praying for the appointment of a receiver. On September 23, 1930, a receiver was appointed, and on November 7 following an order was entered by which all creditors were directed to present their claims to the receiver for allowance on or before February 7, 1931, or be forever barred from asserting the same, unless the court for good cause shown otherwise ordered.

A claim originally of F. L. Buswell and A. M. Stewart, later assigned to the claimant Wayland M. Minot, and a claim of Minot accruing subsequently to the appointment of the receiver, both seasonably filed, were referred to a master to hear the parties and their evidence and report his findings to the court, together with such facts and questions of law as either party might request. The master filed his report. Minot objected to the disallowance by the master of a certain claim as matter of law. The receiver objected to a ruling of law made on the contingency that the first ruling was wrong. On December 4, 1931, an inter-

locutory decree was entered overruling the exceptions and confirming the report. The decree also adjudged that the claim of Wayland M. Minot, trustee, amounted to $14,757.37 instead of $71,740.93, the amount claimed. Minot appealed from the decree. The judge reported his action to this court for decision before further proceedings.

The master recites the following findings: In 1925 a building, to be erected on Atlantic Avenue, in Boston, and called the Harbor Building, was contemplated. In connection with construction loan mortgages, contracts for space in the building were arranged. On July 27, 1925, an application by The Priscilla Company and The Southgate Press for a fifteen year lease of four floors and certain other space in the building to begin July 1, 1926, was accepted by the Harbor Trust Incorporated, the owner of the land. By such acceptance it bound itself by the terms of the application to give a lease in accordance with the form of lease annexed to the application, and further agreed to proceed to complete the proposed building. On July 29, 1925, a first mortgage on the land and buildings to be erected was given to Charles Ridgely, trustee, in the sum of $1,250,000, and a second mortgage was given to The First National Bank of Boston, trustee, in the sum of $400,000. Concurrently with the giving of the first and second mortgages, the lessor's interest in the contract for the lease was assigned to the first mortgagee. Thereafter the building was constructed and possession was given, and taken by the applicants, The Priscilla Company and The Southgate Press, on September 22, 1926. The original time for the completion of the building was extended to October 1, 1926, by mutual agreement.

The lease, in the form attached to the application, was executed by both parties on January 12, 1927, and delivered and accepted as a performance of the former contract; it bound the lessees to joint and several obligations. The lease was expressed to be subject to the first and second mortgages, but made no reference to a third mortgage covering the premises and given by the Harbor Trust Incorporated, to The First National Bank of Boston on

November 26, 1926. The First National Bank had actual notice of the contract for the lease at the time it was executed, and had actual notice of the extension of time to complete the building, and of the taking possession by the lessees under the contract when these events occurred and before it took the third mortgage. On February 28, 1928, an assignee of the third mortgage made an entry for the purpose of foreclosing the same. On April 28, 1928, an assignee of the third mortgage, a "straw" for The First National Bank, sold the premises to another "straw" for that bank. From April 28, 1928, until August 6, 1930, the rents due from tenants so far as paid were collected by this bank as agents for the owners of the equity in the building, who were found to be Buswell and Stewart, "straw men" for the bank. The master found that on August 6, 1930, Minot and the Straus National Bank and Trust Company of New York, successors of Charles Ridgely as trustee under the first mortgage, made an entry for the purpose of foreclosing the same for breach of condition thereof, and since then have been and now are in possession as such mortgagees. But it does not appear that they took possession of the premises held under the lease here involved. The next day they notified the tenants by a notice signed by them as trustees, and setting forth that they as mortgagees had taken possession of the building, and that rent then due or thereafter becoming due was payable to Robert A. Nordblom as agent of Minot, described as resident trustee and one of the mortgagees. In this connection it is important to notice that on February 1, 1927, the lessor's interest in the lease was assigned to the trustee of the first mortgage as security, it being provided, however, that until default all rentals should be paid to the lessor. The Priscilla Company and The Southgate Press indorsed on this assignment an acknowledgment of notice and a consent to be bound thereby. Minot and his then cotrustee asserted the right to collect rents from tenants, but no rent was paid by either lessee between August 6 and December 20, 1930. On the latter date the claimant entered on the leased premises for the purpose

of terminating the lease for breach of covenant thereof. He seasonably filed with the receiver a claim for rents, electricity and water from May 1, 1930, to December 20, 1930, plus $34,000 damages for the termination of the lease, altogether amounting after being reduced by certain credits to the sum of $71,740.93. A proof of claim covering certain items in Minot's proof of claim was filed by Buswell and Stewart, but it appears that this claim has been assigned to Minot.

The master further found that prior to March 1, 1930, the rent for all the premises was paid to the landlord by The Priscilla Company on and after April 1, 1930, The Southgate Press paid rent at the rate of $2,793.52 directly to the landlord for and during the period ending June 30, 1930. It also appears that in certain litigation between the claimant, The First National Bank of Boston, Stewart, and The Southgate Press, the claimant asserted against The Southgate Press the same items specified in its proof of claim in these proceedings. In pursuance of a compromise made April 2, 1931, The Southgate Press obtained a covenant not to sue upon a payment of $28,000 to the claimant, $3,500 to The First National Bank and $3,500 to Stewart.

By agreement of the parties and with the consent of the court the master made the following rulings of law: (1) The foreclosure of the third mortgage on February 28, 1928, terminated the lease; (2) If not, the lease was terminated August 6, 1930, by the foreclosure of the first mortgage; (3) If the lease was not terminated, claims arising subsequently to the appointment of a receiver might be proved; (4) If the lease was not terminated, the item of $34,000 for liquidated damages was not penal and might be proved; and (5) The payment by The Southgate Press must be deducted from the trustee's claim against The Priscilla Company.

The claimant objects to rulings numbered 1, 2, and 5, and the receiver objects to rulings numbered 3 and 4.

1. The first contention of the receiver is that the foreclosure by sale of the third mortgage terminated the lease.

This contention cannot be sustained because of the fact that the bank at the time it took that mortgage had notice that the lessees had entered upon and were in possession of the premises under a contract giving them the right to a lease of a part of the premises. It is a general rule that when the holder of a mortgage given prior to a lease enters to foreclose and demands rent to fall due from a tenant of the mortgagor, the tenant is not liable to the latter for rent. *Cook* v. *Johnson,* 121 Mass. 326. *Adams* v. *Bigelow,* 128 Mass. 365. *Winnisimmet Trust, Inc.* v. *Libby,* 247 Mass. 560, 564. The reason for the rule is that there has been an eviction of the tenant by a paramount title. But mere foreclosure of the mortgagor's interests by sale under power does not terminate the tenant's liability in his covenants with the mortgagor. It was said in *Winnisimmet Trust, Inc.* v. *Libby,* 234 Mass. 407, at page 410, "The tenants cannot avoid paying rent to the assignee of their original landlord unless and until the mortgagee in possession notifies them to pay rent to her, or threatens to evict them, or they have agreed to attorn to her in recognition of her paramount title." If the mortgagee under a subsequent mortgage had entered and taken possession it would have been the assignee of the reversion and entitled to the rents. *Burden* v. *Thayer,* 3 Met. 76. Since there has been no eviction, actual or constructive, the tenant is receiving all he is entitled to from the lessor, namely, the use and enjoyment of the premises, such being the consideration to pay rent. "It is not enough, therefore, that a third party has a paramount title; but, to excuse the payment of rent, the defendant must have been ousted or evicted, under that title." *Morse* v. *Goddard,* 13 Met. 177, 179. As the reason for this rule does not appear in the case at bar there is no occasion for its application. Upon the facts found the third mortgagee did not have a title paramount to that of both the mortgagor and the lessee under which it could have evicted the lessee. See *Southbridge Theatre Operating Co.* v. *Rosenberg,* 271 Mass. 213, 217. Many cases decided by this court have held that the equitable rights of one having an interest in land

by virtue of a contract are enforceable against a purchaser with notice of such contract rights.

On November 26, 1926, when the third mortgage was given, a valid contract for the lease was in effect and possession of the premises had been tendered and accepted. The third mortgagee had actual knowledge of these facts before the third mortgage was taken and was bound to recognize the rights of The Priscilla Company. One who buys land, knowing that the grantor has agreed to sell it to another, takes it in equity subject to such agreement. *Connihan* v. *Thompson,* 111 Mass. 270. Even an oral contract concerning land will be enforceable in equity where the circumstances are such as to entitle the plaintiff to relief. *Low* v. *Low,* 173 Mass. 580. See also *Pingree* v. *Coffin,* 12 Gray, 288, 307; *Young* v. *Walker,* 224 Mass. 491; *Melamed* v. *Donabedian,* 238 Mass. 133, 137; *Ratshesky* v. *Piscopo,* 239 Mass. 180, 186, and cases cited.

It is conceded by the receiver that the contract for the lease was enforceable as between the parties. *Traveler Shoe Co.* v. *Koch,* 216 Mass. 412. But he contends that, as the lease was not executed until more than three months after the completion of the building, the validity of the third mortgage was not affected by the lease. Mortgagees are not protected to a greater extent against equitable titles of which they have notice than other purchasers. Jones on Mortgages of Real Property (8th ed.) § 877. The result is that the action of the holder of the third mortgage by foreclosing it on February 28, 1928, did not terminate the lease. Consequently there was no eviction of the lessees by virtue of a title paramount to that of the tenants. It follows that the lessees were not released from their covenants. If it be contended that because the interest of the lessor in the premises came to an end by the foreclosure of the third mortgage, the lessor no longer furnished the consideration for the enjoyment and use of the premises and hence the lessees were no longer bound by the covenants in the lease, the answer is that the lessor contracted to give and did give a lease for the term agreed upon, and gave an interest in the land subject to no

superior rights except those expressly agreed upon, namely, the first and second mortgages. That was the consideration and there was no failure of it prior to the time the first mortgagee entered on December 20, 1930. The master states in his report that he is unable to follow the reasoning that the rights of the third mortgagee were subordinate to those of the lessees. Although this mortgage contained an express covenant that it was subject to no encumbrances except the first and second mortgages, the covenant is immaterial where, as here, the mortgagee had full knowledge of the contract for the lease and that possession thereunder had been taken by the lessees. The third mortgagee and the mortgagor in these circumstances could not combine to defeat the interest in the premises previously established in favor of the lessees, in view of the decisions of this court hereinbefore cited. The master states: ". . . no circumstances have been shown which excuse the failure to execute the proposed lease on September 22, 1926, when the building was completed or until three months after the third mortgage was executed and recorded"; and "In my opinion, therefore, we are not bound to draw any inferences from these facts except that the parties actually executed the lease at the time they intended to do so and duly recorded it when it was completed." If the master found as a fact by inference that the lessees waived their rights as against the third mortgage, it cannot stand. The inference being drawn from the facts found, a different inference may be drawn by this court. *Prudential Trust Co.* v. *McCarter*, 271 Mass. 132, 139. There is nothing to show that the lessees should have been willing to subordinate their interests to those of the holders of the third mortgage. Moreover, it does not appear that the lessees knew of the existence of the third mortgage until after the lease had been executed. The lease provided that it was subject to the first and second mortgages, but no mention was made of the third mortgage. No inference of such a waiver of the lessees' rights may properly be drawn. If the third mortgagee at the time the mortgage was received knew that two months

had passed from the date of performance of the contract for the lease, yet still, knowing of the agreement, took the mortgage, it did so at its peril and the rights of the lessees were not thereby affected. *Melamed* v. *Donabedian*, 238 Mass. 133, 137. The third mortgagee knew that the lessees had taken possession, and it could have protected itself by inquiry of the lessees whether they intended to enforce their rights under their lease contract. The suggestion, that the rights of other creditors have now intervened, and that the case must be governed by the situation disclosed by the record title as if the mortgagee had no notice of the lease contract, is without merit. The master made this suggestion in view of the statute relating to the registry laws. G. L. c. 183, § 4. On general equitable principles the creditors cannot urge this suggestion because it is not shown that any creditor advanced credit or otherwise changed his position on the ground that the record title showed that the lessees, his debtors, were released from their obligations under the lease, if in any event he would have a right to rely on such a showing. It follows that the lease was not terminated by the foreclosure of the third mortgage in 1928.

2. It is to be determined whether or not the lease was terminated by the entry of the holders of the first mortgage on August 6, 1930, for the purpose of foreclosing same for breach of condition thereof, and since then have been in possession as such mortgagees. The first mortgage was dated July 29, 1925. No sale for the purpose of foreclosure was made. On August 7, 1930, the mortgagees notified the tenants that they had taken possession of the premises as mortgagees, that thereafter the same would be managed by Minot, one of the mortgagees, and that all rent was to be payable to their agent. From and after August 6, 1930, the claimants Minot and the Straus National Bank and Trust Company continued to assert the right to collect rents and so far as paid collected them. On September 16, 1930, a bill in equity was filed, and on September 23, 1930, a receiver of The Priscilla Company was appointed. He notified all interested parties that he did not choose to be bound by

the lease.  No rent was paid either by The Southgate Press or by The Priscilla Company between August 6 and December 20, 1930.  On December 20, 1930, the claimant entered on the premises for the declared purpose of terminating the lease for breach of covenant thereof, and particularly for breach of the covenant to pay rent.  The Southgate Press was in continuous possession of a portion of the building from the time of its completion until April 2, 1931.  On that date litigation was pending between the claimant, The First National Bank of Boston and Stewart on one side, and The Southgate Press on the other, to determine the amount of the liability of The Southgate Press and to whom it was indebted for rent and on other accounts in respect to the premises.  This litigation was settled by the payment of a total sum of $35,000 to various claimants hereinbefore set forth.

As to the first mortgage the master states: "I am of the opinion that if the rights of the parties depended solely upon the notice by the trustee to tenants on August 7, 1930 . . . such notice would be entirely consistent with possession by the trustee for the sole purpose of collecting rents as he had a right to do under the mortgage and that such possession in view of the terms of that mortgage would not operate to terminate the lease.  It is conceded, however, . . . that the trustee on August 6, 1930, made an entry under the first mortgage 'for the purpose of foreclosing the same for breach of condition thereof.'  An entry by a mortgagee for that purpose coupled with a demand upon lessees to pay rent thereafter to the mortgagee in my opinion operates to terminate the lease.  From and after August 7, 1930, therefore if the lease in question had not theretofore been terminated it was actually terminated by the action taken by the mortgagee on August 6, 1930, so that from and after that date The Priscilla Company became a tenant at sufferance.  No rent having been paid by The Priscilla Company after that date a tenancy at will was not established.  No question arises here as to the validity of the lease as against this mortgage as the mortgage itself was recorded prior to the lease, and the agree-

ment for a lease as well as the lease itself . . . [was] expressly made subject to the rights of the first mortgagee."

The master states he understood that the facts found by him are conceded by counsel on both sides, and that he was informed by counsel, with the consent of the court, that they desired to have him make rulings of law on the questions involved. Accordingly he made certain rulings on questions submitted to him. He ruled that the legal effect of possession taken by the first mortgagee of the premises covered by the lease, and of the building in which the premises were located on August 6, 1930, terminated the lease. This ruling was sustained by the court. The general rule is that an entry by a prior mortgagee for the purpose of foreclosure, and a demand for payment of rent by virtue of his paramount title, ordinarily terminates a lease. It is the contention of the claimant, however, that that rule is not applicable because the demand for the payment of rent was not by virtue of a paramount title, but was made by the mortgagees as assignees of the lessors' interest in the lease.

The first mortgagees were entitled to collect rent from The Priscilla Company under the terms of the mortgage subject to which the company held its lease. They were also entitled to collect the rents under the terms of the assignment by the lessor on February 1, 1927, to which the lessee assented. To entitle the mortgagees to act under the rights so conferred, it was their duty to demand the rent by reference to these rights. They failed to pursue that course. They made no special reference to these rights in the notice to The Priscilla Company. Instead of doing so they gave a notice which first stated that "As Mortgagees . . . we have taken possession of the above mentioned building." The second sentence of the notice notified the tenant "of said possession" and demanded "rent now due or hereafter becoming due." Such acts standing alone have been held to constitute a termination of the tenancy. *Morse* v. *Goddard*, 13 Met. 177, 179. *Winnisimmet Trust, Inc.* v. *Libby*, 234 Mass. 407, 410. *Burke* v. *Willard*, 243 Mass. 547, 549. *Burke* v. *Willard*, 249 Mass. 313, 316,

317. The mortgagees might have given notice of the entry and possession taken for the purpose of foreclosure, and at the same time demanded rent under and by virtue of the assignment from the lessor, or of the assignment contained in the mortgage and thus preserved all their rights. This course was not pursued. The mortgage contained the following provision as a part of the property made subject to the lien, "and together with all the rents, issues and profits therefrom and the benefit of all covenants, obligations and agreements to be performed by the tenants of the said building from time to time as contained in valid leases, or agreements for leases (which said rents, issues and profits are hereby specifically assigned, transferred and set over unto the Trustee with the same force and effect as if each and all of the persons who are now or may hereafter become tenants of said building were now known and herein expressly named)," and the further clause that the mortgagee might "enter upon, take and maintain possession of all or any part" of the mortgaged property and might "in his own name as Trustee, acting under the assignment of rents hereinabove made, and under the powers herein granted, hold, manage and operate said mortgaged property and collect the rents thereof." The agreement for the lease and the lease itself contained the provision that it was subject to the mortgage, and the lease also contained the provision against payment of rent to the lessor in advance. Both the agreement for the lease and the lease itself were assigned to the mortgagee with the assent in writing of the lessee. The notice of the mortgagees' entry upon and taking possession of the premises given to the tenants on August 7, 1930, states in terms that possession has been taken by them as mortgagees under the terms of the mortgage of a specified date. Since the lease was made subject to that mortgage, it might reasonably be presumed that the lessee knew its terms as to the rights of the mortgagees with respect to the lease. There is nothing in the notice of August 7, 1930, to limit the rights of the mortgagees under it to those flowing from any particular source or to prevent their asserting those against the lessee arising under the

mortgage, or the assignment. In view of all these considerations the only reasonable inference of which these facts are susceptible is that the lease was not terminated until the entry for that purpose by the mortgagees on December 20, 1930.

The next question is whether the receiver is right in his contention that claims arising after the date of the receiver's appointment may not be proved.

For the efficient and expeditious administration of a receivership some date must be fixed as of which claims must be determined. To allow proof of a claim maturing in a fixed sum before the time set by the court for filing claims interferes in no way with those purposes. It was held in *William Filene's Sons Co.* v. *Weed,* 245 U. S. 597, a case similar to the instant case, that a claim for liquidated damages maturing upon the termination of a lease after the appointment of a receiver for the lessee, that claims maturing after the appointment of the receiver but filed before the time limit set by order of the court could be proved. In that case it was said at page 602 that courts "have no authority to give to the filing of the bill the effect of the filing of a petition in bankruptcy so as to exclude any previously made and lawful claim that matures within a reasonable time before distribution can be made." See in accord with this case *People* v. *St. Nicholas Bank of New York,* 151 N. Y. 592. *Minneapolis Baseball Co.* v. *City Bank,* 74 Minn. 98. The decision in *Atlas Bank* v. *Nahant Bank,* 23 Pick. 480, that the receivers took the property as of the filing of the bill and that a subsequent attachment by a creditor was void, was the origin of the rule stated in *Merrill* v. *Commonwealth Mutual Fire Ins. Co.* 171 Mass. 81, and cases cited, that the rights of creditors are fixed as of the date of the proceedings or at least by the issuing of an injunction. To allow proof of a claim maturing any time before the time limit set does not interfere with efficient and expeditious administration of the receivership estate. This is apparent from a hypothetical case which demonstrates that the receiver's rule would result in an arbitrary exclusion of certain creditors. A claim maturing before

appointment of the receiver could be proved at any time before the limit set by the court, but one maturing the day after the appointment could not. be proved though filed that very day. If the rule contended for by the receiver was once the law of this State it may be easily departed from, since obviously it was not a rule of property. *Napier* v. *Peoples Stores Co.* 98 Conn. 414.

The next question is whether the provision for damages of $34,000 is void as a penalty. The pertinent clause in the lease bound the lessee to indemnify the lessor against loss of rent or at the election of the lessor to pay "as damages the sum of . . . $34,000" and in addition a sum representing the difference between the rental value of the premises for the remainder of the term and the rent. The lessor elected to claim the $34,000 but waived the second item. On consideration the provision does not seem void as calling for a penalty. The question is to be determined by taking into view the subject matter of the contract, the nature of the agreements the parties have entered into and the circumstances. *Lynde* v. *Thompson*, 2 Allen, 456. The case is plainly distinguishable from *Kothe* v. *R. C. Taylor Trust*, 280 U. S. 224. The provision here is well adapted to cover the lessor's expenses in altering and repairing the premises as a possible necessary incident to reletting the premises and to cover broker's commissions. The lease covered more than four floors of a large building and was to extend over a period of fifteen years. It does not appear that the parties contemplated that such expenses would be included in the sum to be paid as the difference between the rental value and the amount of rent reserved. No intent merely to penalize the lessee appears and the contention may be accepted that the sum named bore a reasonable relation to expenses reasonably to be anticipated.

It cannot be said that this is a case where the amount is obviously greater than the damages which could be readily calculated and exactly ascertained as in *DeCordova* v. *Weeks*, 246 Mass. 100, 104. The expenses which this provision might well cover could easily run into large sums.

3. A majority of the court are of the opinion that upon

the findings of the master the amount received in The Southgate Press settlement should be deducted from the amount proved. The amount is to be deducted because it, as the parties agreed, is to be considered a payment on the claim against The Priscilla Company and is a payment made before the claim has been allowed in a definite sum. In *Sohier* v. *Loring*, 6 Cush. 537, 548, it was held that the provable amount of the claim of a holder of a bill against the drawer's estate was not to be reduced by a payment made by the acceptor after the time of making proof but that such a payment received by a holder before making proof of his claim must be deducted from the provable amount. If by "making proof" the court meant merely presentation of the claim to the court rather than approval and allowance of the claim, then the case is authority that the claimant here is not obliged to deduct the amount of the Southgate settlement from the amount for which he may prove. But it is not altogether clear that the court did not mean approval and allowance of the claim, something that would distinguish the case from the one at bar. It appears from the reporter's summary that it came up on appeal from denial of a motion to expunge or reduce the amount of certain claims proved against the insolvent's estate. Furthermore, there is no discussion of principles. underlying whatever rule was laid down. For these reasons it is justifiable to treat the question as open in this State. The case of *Tebbets* v. *Rollins*, 192 Mass. 169, is distinguishable. It was there held that in a suit to wind up an insolvent partnership the holder of a secured note of the partnership might prove the face amount of the note in full without deduction of the amount realized from collateral security put up by an indorser of the note who was also liable as maker as a member of the partnership. In the present case it does not seem that to cut down the provable amount interferes with the claimant's right to the benefit of the joint and several obligations; it simply recognizes the fact that a payment has been made. There were two joint debtors set forth in the lease. A payment by one of them at any time before the date for ascertainment of the

amount to be proved extinguished to that extent the amount of the debt and should be deducted from the amount to be allowed on proof of the claim.

On principle payments received before a claim is definitely allowed should be deducted from the provable amount. This is to carry out the purpose of a fair and equitable distribution of the assets. It is justifiable to go to some lengths to prevent a creditor from proving for an amount greater than that actually owed to him. Practical considerations of convenience and efficiency in the administration of the insolvent's estate do not prevent deduction of a payment made from other sources before a claim is definitely allowed from the amount of the provable claim. If a claim is disputed, as here, the dividend ratio must be adjusted according to the decision. There does not seem to be any good practical reason why a payment properly applicable to a claim should not figure in such readjustment. By taking joint and several promises the creditor has shown his reliance in full on the personal responsibility of each of the obligors. Although there were three promises, there was to be only one performance. It is only this reduced amount which the insolvent owes and for which the creditor, in view of the purpose of obtaining an equitable distribution, should be allowed to prove. To obtain a fair distribution among creditors, it would seem that while proceedings are pending and before a final dividend had been declared the amount for which a claim may be proved must be cut down where the claim has been reduced by payment. In *Commissioner of Banks, petitioner, in re Cosmopolitan Trust Co.* 241 Mass. 346, a claimant was allowed to make proof after the final date set for filing claims, and after a dividend had been declared. Dividends should be allowed only on that account owing when the receiver is ready to make a distribution of the assets of the estate. See *Sohier* v. *Loring,* 6 Cush. 537; *William Filene's Sons Co.* v. *Weed,* 245 U. S. 597. In *Merrill* v. *National Bank of Jacksonville,* 173 U. S. 131, it was held that a secured creditor of an insolvent national bank might prove and receive dividends upon the face of his claim as it was at the time of the declaration of

insolvency, without crediting either his collaterals or collections made therefrom after such declaration, subject to the proviso that dividends ceased when the claim has been paid in full. The above is not in accord with the Massachusetts rule.

When the claimant filed his claim the debtor owed him the full amount thereof. Equitably that debtor does not now owe that amount; it has been reduced by the payment received from The Southgate Press. However desirable and necessary it may be in statutory proceedings under insolvency and bankruptcy statutes to have a fixed rule in such proceedings, an equity court is not required to decree that The Priscilla Company now owes the claimant the full amount of his original claim when it has been reduced by the payment of about one half of that claim. It is manifest that it would be inequitable to allow the claim for an amount in excess of what is now actually owed.

Since it could not properly have been ruled that the lease was terminated by the foreclosure of the third mortgage, the claimant's first objection to the report is sustained. The claimant's second objection to the report is sustained as it could not rightly have been ruled that the lease was terminated by the entry of the claimant and his cotrustee for the purpose of foreclosing the first mortgage and notice given by them to tenants to pay rent. As the master rightly ruled that the amount of the payment made by The Southgate Press after the date within which claims against The Priscilla Company were to be proved but before distribution was to be applied in reduction of the claim of the trustee, his third objection is overruled.

The interlocutory decree is to be modified by sustaining the claimant's first and second objections to the report, and by the substitution of the sum of $41,896.70 without interest (*Attorney General* v. *Supreme Council American Legion of Honor*, 206 Mass. 131, 137), in place of $14,757.37, and as so modified is affirmed. A final decree is to be entered in accordance with the computation of the master adjudging that the receiver allow the claim of Wayland M. Minot, trustee, in the sum of $41,896.70 with costs.

*Ordered accordingly.*