Fecteau, J.
This case involves a claim by the plaintiffs that the Saturday Company Realty Trust, by its trustees, Mark Cote and Daniel Cote, wrongfully failed to honor a purchase and sale agreement with them for the purchase of the land and newly-constructed home located on lot 53 of a plan of land for Lehtola and located at 6 Newcomb Road, Westminister, Massachusetts. Thereafter, a number of events transpired and additional allegations made that has turned this case into, in the words of another member of this court, a hash. Colonial Cooperative Bank, mortgagee of Saturday Realty, has moved for summary judgment, contending that their note, secured by a properly recorded mortgage, which has gone unpaid for many months, takes priority over the Queenos’ rights under their unrecorded purchase and sale agreement with Saturday Realty, notwithstanding that the Bank had some notice of the purchase and sale agreement as part of the loan application from Saturday Realty.
BACKGROUND
From an examination of the documents that make up the summary judgment record, the following facts appear to be uncontradicted. On June 6, 1997, the plaintiffs signed a purchase and sale agreement with the Cotes and Saturday Realty for the land and a soon-to-be constructed home at the location in question. The agreement was signed following their receipt of a proposal from RD&R Builders, another business of the Cotes, for construction of the residence; the house was scheduled to be completed by September 30, 1997. According to the contract, the plaintiffs were to pay $321,415.00 in consideration for the house and land, $16,000.00 of which was paid as a deposit and was given to the broker.
By June 18, 1997, Saturday Realty had applied to Colonial Cooperative Bank for a construction loan, since it referred the matter to an appraiser on that date. The appraisal was satisfactory and, on or about July 21, 1997, the loan was approved for the application amount of $241,500.00.
Problems developed between Saturday Realty and the Queenos. There are cross-contentions concerning cash flow problems experienced by the builder, delays in construction, extra money paid by the Queenos to complete the home, extensions to the proposed closing date and Saturday Realty’s request for additional payments in order to close. A “notice of contract” was filed, under the provisions of G.L.c. 254, sec. 4, against RD&R Builders, acting for Saturday Realty and the Cotes, by Wachusett Lumber & Building Supply, Inc., on a open account for an amount not to exceed $25,000.00 and with reference to the property in question. On October 29, 1997, Colonial Cooperative Bank issued a check for $55,020.00, payable to Saturday and Wachusett Lumber. On August 12, 1998, Mark Cote, on behalf of RD&R Builders, signed a change order showing that the Queenos were being given a credit of $40,167.00 off the total amount due. Instead of being completed by September 30, 1997, the house was still unfinished on August 14, 1998. On that date, a temporary occupancy permit was issued and the Queenos were allowed by Saturday Realiy to occupy the home, with the consent of the local building inspector.
On or about November 5, 1998, the Cotes signed a deed in favor of Wainwright Realty, Inc., for eight lots owned by the trust, including lot 53, all for consideration of less than $100.00. The deed does not reference the mortgage of Saturday Realty Trust with Colonial Cooperative Bank. There is some evidence of a connection between the principals of Wainwright, Wachusett and Saturday.
The plaintiffs filed suit on November 20, 1998 against the Cotes as trustees of Saturday Realty Trust, and against the broker holding the deposit. They seek specific performance of the real estate contract they made with Saturday Realty. Upon application, under *451 the provisions of G.L.c. 184, §15, the plaintiffs were granted a lis pendens on December 1, 1998. Wainwright was added to the suit by the plaintiffs on December 11, 1998, alleging a fraudulent conveyance and, on December 16, 1998, the lis pendens was allowed to be revised as to it. In February 1999, Wachusett Lumber was added as a defendant on a civil conspiracy theory among others. Colonial Cooperative Bank was added in November 1999, with the plaintiffs seeking a declaratory judgment that declares the mortgage subject to the purchase and sale agreement and an order that prohibits the bank from conveying the property to anyone other than the plaintiffs. On November 16, 1999, a lis pendens and a preliminary injunction was granted in favor of the plaintiffs as against Colonial.
In order to succeed, the plaintiffs must prevail on their claim that their contract for the purchase of real estate takes priority over the mortgage from Saturday Realty to Colonial, due, they allege, to the notice that Colonial had of the contract in the loan application from Saturday. The bank contends that since the plaintiffs failed to record the purchase and sales agreement or otherwise comply with the provisions of G.L.c. 184, Sec. 17A, the mortgage has priority and that it should be permitted to complete the foreclosure it has already obtained as against Saturday Realty by a sale. As between the bank and the plaintiffs, then, the only issue that appears to be necessary to consider is whether the unrecorded purchase and sale agreement between the plaintiffs and the mortgagor is legally sufficient to give the Queenos a position of priority over the recorded interest of the bank.
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, the moving party may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp. 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
The bank contends that the plaintiffs failed to take advantage of the only statute which could have provided the priority they seek, namely, G.L.c. 184, §17A. Colonial further contends that the fact that it had some notice of the purchase and sale agreement between Saturday and the plaintiffs makes no difference to its claim for priority, under general “first in time, first in right” principles that govern the conveyance recording system. As a matter of undisputed fact, the purchase and sale agreement was never recorded. Even if it were, the plaintiffs, in order to continue to comply with that statute, would have been required to file suit and to file a memorandum similar to that in G.L.c. 184, §15, all within a 90-day period following the date set for delivery of the deed. The summary judgment record does not contain evidence of any written extensions of the purchase and sale agreement. Therefore, the lynchpin date would have been September 30, 1997, requiring suit to have been filed by December 30, 1997. The plaintiffs filed suit in November 1998.
The plaintiffs claim protection under the recording statute found at G.L.c. 183, §4, which states in relevant part: “[a] conveyance of an estate in fee simple, fee tail or for life, or a lease for more than seven years from the making thereof, or an assignment of rents or profits from an estate or lease, shall not be valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it, unless it, . . . is recorded in the registry of deeds ...” The plaintiffs claim that the bank was on actual notice of their purchase and sale agreement and that the agreement constitutes an interest in real property which is protected by this statute. Furthermore, the plaintiffs assert that under this statute, the mortgage is invalid as against them or at least inferior to their interest in the property through the contract.
First, the statute does not expressly refer to contracts for the sale of real property. The parties have not provided any case, nor has the court located any authority for extending the protection of this statute to a contract for the purchase of real estate. In the case of Richardson v. Lee Realty Corp., 364 Mass. 632, 635 (1974), the court stated, in connection with a somewhat related issue, that “[w]e need not decide here whether the strict standard of actual notice applicable as to unrecorded instruments pursuant to G.L.c. 183, §4, is applicable to matters disclosed of record but not within the scope of that section."
The plaintiffs’ contention that their rights under the purchase and sale agreement amount to an equitable interest in the property relies on the cases of International Paper Co. v. Priscilla Company, 281 Mass. 22 *452 (1932), and Federal Deposit Insurance Corp. v. Slinger, 913 F. 2d 7 (1st Cir., 1990). In International Paper, the court stated that “the equitable rights of one having an interest in land by virtue of a contract are enforceable against a purchaser with notice of such contract rights.” International Paper, supra at 29-30. This language was later cited in Federal Deposit, a case decided in the federal court but interpreting the law of Massachusetts, without explanation of the facts of International Paper.
The case before us is certainly not the case that was presented in International Paper, a case that not only predated c. 184, §17A, but also one that involved a contract for a lease. In it, the tenant acquired possession of the premises prior to the conveyance in question, which the court found to have been a significant factor in assessing the existence and/or notice of possibly superior rights. Moreover, Massachusetts law does not appear to be as the court in Federal Deposit applied it: “[w]hen a purchase and sale agreement has been executed, the vendor holds the legal title to the property ‘subject to an equitable obligation to convey’ it to the purchaser ‘on payment of the purchase money.’ . . . Until the deed is delivered the vendor bears all the risks of ownership should the property be destroyed ... He also has the exclusive right to possession of the property and the right to rents and profits . . . Thus the rights of the purchaser are contract rights rather them rights of ownership of real property." [Citations omitted.] Laurin v. DeCarolis Construction Co., Inc., 372 Mass. 688, 691 (1977).
Thus, not only is the statute silent as to purchase and sale agreements, it cannot be inferred that a contract for the sale of real property is a “conveyance" of an ownership interest in real property: it is neither a lease nor an assignment of rents or profits. Had the legislature intended such, the recording statute would likely have been amended to include contracts for the sale of real property, following the enactment of c. 184, §17A. It did not do so.
Second, even if the statute applies to a purchase and sale agreement, since it was not recorded, the bank had to have actual notice of the contract. “Actual notice of an unrecorded instrument is required, and actual notice has been strictly construed." Richardson, supra at 635, citing General Builders Supply Co. v. Arlington Co-op Bank, 359 Mass. 691, 697 (1971). “Strict construction of actual notice may be justified in part because the holder of an unrecorded instrument could protect himself simply by recording it in the appropriate registry of deeds.” Richardson, supra at 635. “Notice requirements are also a consequence of the intent of the registry laws to establish a record system on which purchasers can rely.” Id. “Purchasers should not be required to look beyond the registry of deeds further than is absolutely necessary.” Id., quoting Swasey v. Emerson, 168 Mass. 118, 120 (1897).
The summary judgment record does not show that the bank had notice of all the details of the agreement. Moreover, the record shows that the mortgage was approved and recorded long before the date set for delivery of the deed and the date that the plaintiffs acquired occupancy. “A person claiming that another is not a bona fide purchaser has the burden of proof.” Richardson, supra at 634. “Knowledge of facts which would ordinarily put a parly upon inquiry is not enough.” McCarthy v. Lane, 301 Mass. 125, 128 (1938). As was suggested above, the case of International Paper can be distinguished from the case at bar on its facts.
More importantly and realistically, it should be observed that without the construction loan that the plaintiffs’, builders obtained, the house would likely not be built. Moreover, even if the plaintiffs had recorded their purchase and sale agreement, no bank following ordinary and generally known security practices would have lent money and taken a position secondary to anyone, especially the customer of the builder to whom the money was being lent. It defies common sense to believe that the bank would not have required the plaintiffs to subordinate their instrument, if it had been recorded, to its mortgage. Looking at the case from the date that the bank’s mortgage was recorded, it would not have served the plaintiffs’ interest to have attempted to place their instrument ahead of the bank’s. Had they insisted, the bank would likely have refused to make the construction loan.
For the foregoing reasons, then, Colonial’s position is superior to the plaintiffs as a matter of law and it should be allowed to proceed with its foreclosure sale. However, due to the existence of other issues in the case that involve the other parties, that portion of the preliminary injunction that prohibits sale to any party other than the plaintiffs must be modified to allow sale to the general public, which includes the plaintiffs; the prohibition of sale will remain in effect as against the other defendants and their principals, agents, and employees.
ORDER
It is therefore ORDERED that defendant Colonial Bank’s motion for summary judgment is ALLOWED. It is further ORDERED that the lis pendens as to the defendant Colonial Bank be dissolved and the preliminary injunction against the defendant Colonial Bank, issued on November 16, 1999, be modified to allow Colonial Bank to foreclose on the property; the preliminary injunction prohibiting the bank to sell the property to any of the remaining defendants, or their principals, agents, and employees, during the foreclosure continues in effect.